## SHELDON *vs.* THE HUDSON RIVER RAIL ROAD COMPANY.

In an action against a rail road company, to recover damages for the destruction of the plaintiff's building by fire, through the negligence of the defendant, the plaintiff must show that the act or omission causing the loss was the act of the defendant ; and that such act or omission was a negligent one.

What facts are necessary to be proved to establish the charge of negligence, in such a case.

It is not enough for the plaintiff to show a possibility that the fire was communicated to the building by sparks from the defendant's locomotive.

The plaintiff cannot recover upon a possibility ; nor even upon a probability.

Sheldon *v.* Hudson River Rail Road Company.

To justify a verdict, the law requires such proof as will leave no reasonable doubt of the existence of the fact upon which it must rest.

It is amongst the primary and most important duties of the court to order a nonsuit, or to grant a new trial, whenever the evidence is not sufficient to authorize or sustain a verdict. *Per* BROWN, J.

When there is proof which, uncontradicted, makes out the fact upon which the recovery depends, on the one side, and there is testimony which tends to disprove its existence, on the other; or, when the recovery depends upon the degree of credit to be given to the witnesses on either side, whatever may be the opinion of the judge at the trial, he should not interfere; because these are questions to which the jury alone can respond. *Per* BROWN, J.

But when the evidence is of such a character that the court in bank would be bound to set aside the verdict, (should the jury find one,) as unsupported by the evidence, it is the duty of the court to nonsuit the plaintiff. *Per* BROWN, J.

APPEAL by the plaintiff from a judgment of nonsuit, entered at a special term. The action was brought to recover the value of the plaintiff's mill, situated about 67 feet east of the Hudson river rail road track, at Tarrytown, which was destroyed by fire, on the 7th of February, 1852, communicated, as the plaintiff claimed, by sparks from the defendant's locomotives. The complaint alleged negligence and carelessness in constructing the engine, as well as in managing and conducting the same. The facts appearing on the trial are set forth in the opinion of the court.

*S. E. Lyon,* for the plaintiff.

*T. M. North,* for the defendant.

*By the Court,* BROWN, J. At the time the accident occurred which is the subject of this action, the defendant was in the lawful and rightful use of its road, operating its trains in the usual and customary manner by means of locomotive engines. It was doing just what it was created to do, and just what the law authorized it to do, and if it was done with due care and circumspection, and with a due regard to the rights of others, it incurred no special responsibility. For if it could

not employ fire to generate steam, as a motive power, it could not fulfill the end of its being.   If the nature of the enterprise in which it was engaged was in any. degree hazardous to the property of others in the vicinity of the road, it was not responsible for that hazard further than as it imposed upon the company the duty of greater care and caution and skill in the conduct of its business.   Travel and transportation by railway has become one of the necessities of human life, and those who own or erect buildings in the vicinity of such structures must be content to bear their share of the hazards, if any, incident to the business.   These observations are made to show that in seeking to render the company liable in this action for the destruction of his mill, the plaintiff must do what must be done by every other plaintiff against every other defendant in a similar action—show that the act or omission of which he complains was the act or omission of the defendant, and also that such act or omission was a negligent one.   It is not enough for him to show that the defendant uses fire to generate steam ; that the locomotive engines running upon the road occasionally emit sparks of fire and cinders ; that his mill was within 67 feet of the track of the road, with some of the west windows and those next the road left open, and carpenter's shavings and other combustible matter upon the floor ; that no business was carried on at the mill, and no one employed about it at the time ; that the west wind was blowing stiffly when the fire was discovered, and that the company's trains passed to and fro several times each day.   These circumstances are quite material and essential, but without something in addition they do not establish the principal fact alleged in the complaint, because they do not exclude the idea that the fire may have originated in some other source.   Standing alone, these circumstances do no more than make out a possible case that possibly the fire proceeded from the defendant's locomotives.   It is not enough for the plaintiff to show a possibility that the fire was communicated to the mill by sparks emitted by the defendant's locomotives.   He cannot recover upon a

possibility. Even if the evidence went farther and brought the fact sought to be proved within a probability, still the plaintiff must fail: because, to justify a verdict, the law requires, not positive proof it is true, but such proof as will leave no reasonable doubt of the existence of the fact upon which it must rest. The rights of property, and all claims to its possession and enjoyment, are dependent upon the existence of certain facts. And when they are disputed, and become the subjects of judicial investigation, if juries could assume their existence, without sufficient evidence, and render verdicts upon possibility, probability and conjecture, the courts would be shorn of their legitimate authority, and the wise and just rules of the common. law, as they have been recognized and applied from time immemorial, would lose their principal value. It is amongst the primary and most important duties of the court to order a nonsuit, or to grant a new trial, whenever the evidence is not sufficient to authorize or sustain a verdict. The power to do so is highly conservative and essential to the due administration of justice. It is a power which the courts must constantly and freely exercise, unless they will consent to see the immature and imperfect conclusions of juries substituted for the rule of right. When there is proof which, uncontradicted, makes out the fact upon which the recovery depends, on the one side, and there is testimony which tends to disprove its existence, on the other; or when the recovery depends upon the degree of credit to be given to the witnesses on either side, whatever may be the opinion of the judge at the trial, he should not interfere, because these are questions to which, according to the frame and constitution of our courts, the jury alone can respond. But when the evidence is of such a character that the court in bank would be bound to set aside the verdict, (should the jury find one,) as unsupported by the evidence, it is the duty of the court to nonsuit the plaintiff. (*Stuart* v. *Simpson*, 1 *Wend.* 376. *Demyer* v. *Souzer*, 6 *id.* 436. *Rudd* v. *Davis*, 3 *Hill*, 287.) The decision of such a motion must also be regarded as some test of the weight and

force of the plaintiff's evidence.   For should it be denied, the jury will naturally infer, and would have a right to infer, that in the opinion of the judge there is evidence (if the jury give it credit) to justify a verdict in favor of the plaintiff.

The plaintiff's mill was destroyed on the 7th of February, 1852.   None of the witnesses examined at the trial saw the fire sooner than a period of time between fifteen minutes and twenty minutes past two o'clock in the afternoon.   Two of the company's trains passed the *locus in quo* about the middle of the day on which the fire occurred—the train of which John D. Vermeule was the conductor from the south, and the train of which Lewis F. Minard was the conductor, drawn by the engine Oneida, from the north.   The complaint charged that the fire which destroyed the mill proceeded from the locomotive of the train from the south.   This was the theory of the plaintiff's case (as I infer from the papers) when the action was tried before Mr. Justice STRONG, in 1853. Upon the trial before Mr. Justice LOTT in 1858, which is now under review, it was proved that when the up train (Vermeule's) passed the *locus in quo* between 15 and 20 minutes past two P. M., the mill was on fire; and there was also read a stipulation by the plaintiff's attorney that he should insist " that the burning of the plaintiff's mill was caused by the engine Oneida, attached to the down train under charge of conductor Minard."   I allude to this for no other purpose but to show that the inquiry is narrowed to the sparks and fire emitted by the locomotive attached to Minard's train.   I have said that none of the witnesses saw the fire sooner than a period between 15 and 20 minutes past two o'clock P. M.   I refer to the evidence.   Michael Barrett, a witness in the employment of the plaintiff, was engaged drawing gravel at the time; went to dinner at 12 o'clock; the dinner is one hour. Had drawn one load after dinner, and was going back for the second load when he saw the smoke.   Thinks he saw the smoke between 15 and 17 minutes past two o'clock.   Thinks it was from 20 to 25 minutes before he saw the smoke that he

heard a train pass. Again, he thinks the train passed 15 or 20 minutes before he saw the smoke. Michael Morrisson, another witness in the employment of the plaintiff, said they went to dinner at 12 o'clock, and their nooning was about one hour. Barrett called his attention to the fire, about an hour after nooning. These were the only witnesses examined for the plaintiff who gave evidence of the time the fire was first discovered. John D. Vermeule was examined for the defendant, and as to this point said : He passed the mill with the up train from 15 to 20 minutes past two P. M. It was then on fire. Jerome Bowers, another witness for the defendant, also, first saw the fire after Vermeule's train passed up. It was due at Tarrytown at 2.17 or 2.20, and after it passed he went out and looked over the track and saw the fire. There is no discrepancy. All these witnesses first saw the fire at or after the time Vermeule's train passed up, which was at 17 minutes past two. The plaintiff also examined L. F. Minard, the conductor of the down train, to show when that passed the mill. He said he passed it at one o'clock P. M. ; and in this fact he is corroborated by Jerome Bowers, the track master. There is no other testimony as to the time of the passage of Minard's train. It results from this statement of the testimony, that Minard's train, which is charged with causing the fire, passed the mill at one o'clock P. M. That one hour and 17 minutes elapsed before any fire was discovered. And that the train which the witnesses Barnett, Barrett and Morrisson heard pass was not Minard's train down, but Vermeule's train up, because they say it passed 15 or 20 minutes before they saw the fire. It is worthy of remark that no witness saw the Oneida pass down but the track master Bowers, to whose evidence I will revert presently. No one saw any sparks or cinders emitted by the locomotive in the vicinity of the mill ; and no witness has been examined, but Bowers, who was near the mill during the hour and 17 minutes that elapsed from the time the Oneida passed, to the time the fire was discovered, or who is able to say whether persons were in the vicinity of the

mill or not. Indeed none of the plaintiff's witnesses were at the mill, or say they saw it, for several days before the fire. I think the plaintiff was bound to furnish some proof of this kind. He proves that the defendant's locomotive was within 67 feet of his mill at one o'clock on the day of the accident, and might have communicated the fire; but he omits to prove, or is unable to prove, that other persons were not near the mill during the time to which I refer, who might also have communicated the fire. Had it appeared upon the trial that no persons were in or about the mill during the forepart of the day of the fire, or even during the 1 hour and 17 minutes after the Oneida passed, who could either accidentally or intentionally have fired the mill, he would have supplied a very necessary link in the chain of circumstantial proof by which he sought to fix the liability of the company, and without which no jury would have been authorized to give him a verdict. It would be unreasonable to charge the Oneida with the destruction of the plaintiff's property because she carried fire in the furnace, and passed within 67 feet an hour and 17 minutes before the smoke or flames made their appearance. The proof does not disclose the state of the population in the vicinity of the mill; but it does appear that it was situate between Tarrytown and Irvington; and it is not too much to assume that it was in a populous neighborhood, and exposed to the intrusions and risks which attend unoccupied buildings in such places. If the proposition of the plaintiff's counsel, that he had a right to claim a verdict upon the evidence, could be entertained, it would fix the liability of rail road companies operating their roads with locomotive engines for all accidents by fire in the vicinity of their roads, which they were not able to prove proceeded from some other source.

There is another part of the evidence which I should notice. Robert Riker, a witness for the defendant, went to the mill five or six days before the fire, tried to get in and failed. He then went to the house and got the key, entered the building, removed some tools which he had there, and left. He found

Sheldon *v.* Hudson River Rail Road Company.

the windows open, and left them open. He was carpentering in the mill, leaving shavings, hay, straw and packing boxes in the basement. "The least spark," he says, "in the world through the windows would have set it on fire." The theory of the plaintiff upon the trial was that the sparks or cinders from the Oneida were driven by the west wind into these open windows upon the shavings, hay and straw upon the basement floor. We have seen that the Oneida passed at one o'clock, and the sparks and cinders, if they caused fire, were driven in amongst the combustible materials at that hour. It happened, however, that Jerome Bowers, the track master, passed over the track near the mill, making his customary examinations, at twenty-five minutes past one. He saw nothing out of the way—no indications of fire or smoke—and there was nothing between the mill and the witness to obstruct his sight. He could see the mill for the space of two hundred feet before he got to it. He first discovered the fire at Irvington, a mile and a half below, after Vermeule's train passed up, which was at two o'clock and seventeen minutes. Now I submit, that this evidence is wholly irreconcilable with the only theory which the plaintiff sets up; for had the sparks and cinders been driven in among the hay and shavings at one o'clock, some indications of such an event would have exhibited themselves at the time Bowers made his examinations.

I am therefore brought to conclude that the evidence upon the principal question was not of such a character as entitled the plaintiff to claim a verdict from the jury, and that he was properly nonsuited at the trial. The question of the alleged inefficient and negligent construction of the plaintiff's engine and fire apparatus, I decline to consider.

The judgment should be affirmed.

[DUTCHESS GENERAL TERM, May 9, 1859. *Lott, Emott* and *Brown,* Justices.]