KATIE KETLER KIDWELL *v.* JOHN W. BRUMMA-GIM, ADMINISTRATOR WITH THE WILL ANNEXED OF THE ESTATE OF JACOB C. BEIDEMAN, DECEASED.

ADMINISTRATOR WITH WILL ANNEXED.—If the testator appoints an executor of his will, and the executor dies, and an administrator with the will annexed is appointed, the administrator with the will annexed, under the statutes of California, possesses all the power conferred on the executor named in the will, and can sell the land devised if the executor could have sold it.

POWER TO SELL GIVEN IN A WILL.—When the testator in his will directs his executor, within one year after his decease, to sell his real estate, the proceeds to be disposed of upon certain trusts, the power to sell is not limited to one year, but may be exercised after that time, unless there are express words in the will showing the intention of the testator to thus limit the exercise of the power.

APPEAL from the District Court, Fifteenth Judicial District, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*J. B. Felton*, for Appellant.

*Thompson Campbell*, for Respondent.

1st. Did the power to sell pass to the administrator? Under our laws the executor or administrator takes by operation of law an interest in the real estate of the testator, growing out of the right to its possession, and because he is invested with the rents and profits of the land. His authority to sell is a power coupled with an interest, and survives. (*Bergen* v. *Bennett*, Caine's Cases, 16; Probate Act, Secs. 114, 178, 194 and 195; *Steele's Executors and Heirs* v. *Moxley*, 9 Dana, 139.)

2d. Does the power to sell now exist? The answer to this turns upon the question, whether the power to sell is coupled with other trusts created by the will? It will be seen by an examination of the will that the trusts created by the testator grow out of and depend upon the execution of the power to sell. The power to sell is therefore not a mere naked power, but is coupled with specific trusts, and which are in all respects subordinate to the power itself. Where the power to sell is coupled with other trusts and duties, and duties which require the execution of such power, the survivor may lawfully execute the power. (*Franklin* v. *Osgood*, 14 John. 553; *Jackson* v. *Ferris*, 15 John. 347; 3 Binn. 73.) The question of time would seem to be material only in cases of mere naked powers; but when the power is coupled with an interest or a trust, then such trust is not made subordinate to the time, but merely to the power, unless the nature of the interest or trust be such as to make time a material part of the power to sell, and which is not the case in the present instance. It is a familiar rule of construction that many requirements of law may be regarded as directory. Lord Mansfield remarks: " That there is a *known distinction* between circumstances which are the *essence* of the thing required to be done by an Act of Parliament, and clauses merely directory." (1 Burr. 447.) The same rule of construc-

tion which Courts apply to the acts of public officers, it is submitted, is applicable to the acts of a trustee, where it appears that the designation of time within which he is directed to perform some particular act is not of the *essence* of the power, but which may, for satisfactory reasons, be disregarded. In all such cases the act is valid if done afterwards.


By the Court, SAWYER, J.:

Jacob C. Beideman, a resident of San Francisco, died on the 8th of July, 1865, seized of a large amount of real estate in the City and County of San Francisco. He left a will bearing date the 26th day of January, 1863, in which it is provided as follows : "First—The executor of this my last will and testament will, within one year after my decease, sell at public auction, in proper subdivisions, at said city and county, after giving two months notice of such sale, all the real estate I shall own, be seized, possessed of or interested in at the time of my decease, etc.;   *   *   and from the proceeds of such sale the said executor will pay the expenses of my last sickness, the expenses of my funeral and all my just debts.   *   * Second—I give and bequeath and devise to Henry F. Williams, of the said City and County of San Francisco, twenty thousand dollars in money, proceeds of the sale above provided for, remaining after the said expenses and my just debts are paid ; in trust, however, for the following purposes and none other or different—that is to say," etc., specifying the purposes. He then gives twenty thousand dollars more, " proceeds of the sale above provided for," to said Williams, " in trust " for other uses specified ; then various other sums, in trust for sundry other purposes; then : " Ninth—And from the proceeds of the sale of my property, remaining after all the above gifts, devises and bequests are fully provided for, I make the following gifts, devises and bequests : that is to say "— specifying a large number of bequests, many of which are to various public and charitable institutions. After which, he disposes of the residue to other designated parties upon speci-

fied trusts, and appoints Samuel H. Parker sole executor. The dispositions of the will are wholly different from those provided by the Statute of Descents and Distributions. On the 29th of July, 1865, letters testamentary issued to said Parker. On the 14th of March, 1866, after entering upon his duties as executor, and within a year after the death of the testator, said Parker died. On the 30th of April, 1866, letters of administration, with the will of said Beideman, deceased, annexed, were issued to Wm. R. Satterlee, and defendant Brummagim. On the 9th of December, 1866, said William R. Satterlee died, leaving defendant Brummagim sole surviving administrator with the will annexed. One year after the death of said Beideman expired on the 8th of July, 1866. The defendant Brummagim, as administrator with the will annexed of said Beideman, after the expiration of the year, was proceeding to sell the real estate of the testator in pursuance of the direction to the executor contained in the first clause of the said will. The plaintiff, a niece of the testator, and one of the devisees, and a *cestui que trust* mentioned in the will, applied for an injunction to restrain the sale, on the ground that the defendant had no power to sell, and that a sale would cloud the title to the real estate, diminish the value and involve her in litigation and loss. The District Court entered an order refusing to grant an injunction, and plaintiff appeals from the order.

But two questions are presented by the parties for our decision :

Firstly—Did the power to sell, as set forth in the will, pass to the administrator with the will annexed? And if so,

Secondly—Was the power to sell limited to one year after the death of the testator, or does it still exist, notwithstanding the expiration of the year?

As to the first question, the power was not merely personal. It was not conferred upon Samuel H. Parker in his individual character ; it was given to the executor as such ; it was given *virtute officii*. In *Jackson* v. *Ferris*, 15 John. 345, the provision of the will is : " I will and order that all my just debts

and funeral charges be paid by my executors, hereinafter named, out of my personal estate. If there should not be enough of my personal estate, I will and order some of my real estate to be sold to pay my debts." The Court say: " The testator, in the case before us, gives the power to sell to his executors without naming them, which shows that the authority intended to be given was *virtute officii*, and it being a power to sell for the purpose of paying debts, the exercise of it was necessary to effectuate his intention." (Ib. 347.)

In this case the executor is not named in the clause at all. It is: " the executor of this, my last will and testament, will, within one year after my decease, sell at public auction," etc. It is clearly given *virtute officii.* This is not a mere naked power, but a power coupled with various trusts, which could only be carried out through an execution of the power. The power, therefore, did not die with the party who was named executor in the will, if there is any other mode provided by law for executing the power, notwithstanding the death of the party named as executor. In *Franklin* v. *Osgood*, 14 John. 553, Mr. Justice Platt says: " There is also another class of cases which clearly show that where the terms made use of in creating the power detached from the other parts of the will confer merely a naked power to sell; and yet the other provisions of the will evince a design in the testator that at all events the lands are to be sold, in order to satisfy the whole intent of the will, then, also, the power survives. In this latter case it is not a naked power, in the sense of Lord Coke's general rule, but is coupled with other trusts and duties which require the execution of the power to sell. (*Barnes' Case*, see Wm. Jones R. 252 ; Cro. Car. 282 ; Pow. on Dev. 297, 307 ; Hard. 419 ; Cro. Ch. 382 ; Cro. Eliz. 26 ; Sug. on Pow. 141.)" *Zebach* v. *Smith*, 3 Bin. 69, is to the same effect. In this case it is clearly manifest from the other provisions of the will that there are trusts depending upon the execution of the power. The power was not the principal thing. The objects of the will are expressed in the various trusts and dispositions made of the proceeds of the sales of the property of the tes-

tator, and the power to sell was only given in aid of the trusts, and to enable them to be carried out. The power was clearly designed to be wholly subsidiary to the trust.

Section forty-two of the Probate Act provides that, " When all the persons named as executors are incompetent, or shall renounce or fail to apply for letters, or to appear and qualify, letters of administration with the will annexed shall be issued." Section forty-eight provides, that " Administrators with the will annexed shall have the same authority as the executor named in the will would have had, and their acts shall be as effectual for every purpose." Section ninety-seven provides, that, in case the executors shall die or the powers be revoked, the Probate Court shall also issue letters of administration with the will annexed, and " the administrator so appointed shall give bond in like penalty with like sureties and conditions as hereinbefore required of administrators, and shall have the like power and authority." And section one hundred seventy-eight provides : " When * * any property directed by the will to be sold, whether for payment of debts or expenses, or for any other purpose, the executor or administrator with the will annexed may proceed to sell without the order of the Probate Court," etc., and when there are special directions in the will he is to be " governed by such directions." The statute, then, in express terms provides a mode of executing the will of the testator in case of the death or failure to act, or other disability of the executor named in the will. These provisions were in force at the time of the making of the will in question, and were a part of the law in view of which the will must have been executed. The testator is presumed to have understood that in case of the decease of the party named as executor without any other provision in the will supplying his place, the Probate Court would be authorized to appoint an administrator with the will annexed, who would be thereby invested with all the powers of the executor named in the will, subject only to such special supervision and limitations as were

imposed by the statute itself. The effect is the same as if the testator had incorporated these provisions in express terms into the will. An administrator with the will annexed having been duly appointed, we think, under the statute, he is invested with all the powers conferred on the executor named in the will, except so far as there are express limitations put upon those powers, and that he can sell if the executor himself, if alive, could sell. In Kentucky, it is held that a power to sell lands given by a will to executors devolves, by operation of law, upon an administrator with the will annexed. (*Peebles* v. *Watts' Administrators*, 9 Dana, 103.) There seems to be a statute upon the subject in that State similar to our own. (*Steele's Executors* v. *Moxley*, 9 Dana, 139.)

As to the second question, upon a consideration of the entire will, we entertain no doubt that the testator did not intend to limit the exercise of the power to the period of one year after his decease. He directs the property to be sold within one year, but the provision is directory, merely. As before shown, the power is coupled with, and subsidiary to, certain express trusts, and is given as the means, and only means, of carrying out those trusts. The testator determines the objects upon which his bounty shall fall, and the mode by which his wishes shall be carried out. He nowhere indicates any contingency upon which his property, or the proceeds of the property, shall be diverted from the objects specified, or upon which the trusts shall fail. He declared his purpose that the property should be sold, and the proceeds disposed of upon certain trusts for the benefit of certain specified parties and charities. These were the principal objects to be accomplished—the essentials of the will; the rest related to the mode of accomplishment. True, he directs the sale to take place within a year, but time is not of the essence of the thing to be done, or of the power. He was, doubtless, desirous that the beneficiaries should, at the earliest practicable period, enter upon the enjoyment of his bounty—hence the direction. To give the will any other

construction might defeat the trusts and disappoint the intentions of the testator, as clearly manifest from a view of the entire will. It would put it in the power of the executor by wilful neglect, or of parties interested, by obstructing the sale by legal proceedings to defeat the will of the testator. Or other circumstances might occasion the same result. *Miller* v. *Mcetch* 8 Pa. St. R. 419, is in point. A sale was made by one of the executors—one having died and one renounced —several years after the death of the testator, under the following clause in the will: "I will that my executors, on or before the 1st of April next ensuing, sell either at public or private sale, as they may judge proper, all my estate, real and personal," etc. The validity of the sale was in question in an action of ejectment. On the point the Court say: "Another objection urged against the validity of the sale as an execution of the power, is, that it was not made within the time contemplated by the testator. But this is equally destitute of merit with the other objections. It is true that equity will never aid the non-execution of a mere naked power, which it is optional with the party to execute or not. These powers are never imperative; they leave the act to be done at the will of the party to whom they are given. But trusts are always imperative; and if it is to be effected by the execution of a power, equity will never suffer it to fail from the negligence of the trustee, but will compel him to execute it. (16 Des. 26.) An instance of this is where a power is given by a will to trustees to sell an estate and apply the money on trusts. (2 Sug. on Powers, 174.) So where, as in this instance, the proceeds of the sale are to be distributed in a particular way. Though in such cases a direction is given for the execution of the power within a limited period, it may be exercised after the lapse of that period, for time does not enter into and make a part of the power. Where the principal intent is to confer a benefit on *cestui que trusts*, a non-execution of the power within the time limited shall not be suffered to defeat it. The execution of a power to sell after the time directed is not like an attempted execution before

the time prescribed, as was the case in *Loomis* v. *McClintock*, 10 W. 74. In the latter case the act of the party is void, for, until the time arrives for its execution, the power has no existence; but after it has sprung into life, when it is coupled with a trust or interest, it continues to exist until exercised." A similar question arose in *Daly's Lessees* v. *James*, 8 Wheat. 531, where the direction was, in a certain event, to sell "within two years after the decease" of the testator's son. It was held by a divided Court that the devise of the proceeds to be derived from the sale failed to take effect in consequence of the death of the devisees in the lifetime of the son, so that the contingencies upon which the power to sell depended never arose. After determining this point upon a full discussion, it is very briefly added that, whether the conclusion attained is correct or not, the sale was limited to two years after the decease of the son. The little said in support of the latter conclusion is very unsatisfactory, and, to our minds, is conclusively and satisfactorily answered by Mr. Justice Johnson in a clear and able dissenting opinion (Ib. 539.) The view maintained in the dissenting opinion was adopted in the much later case before cited from the State of Pennsylvania. The only other case brought to our notice supposed to bear directly on this point is *Richardson* v. *Sharp*, 29 Barb. 228. But the circumstances upon which the Court seems to have particularly rested its decision in that case are special, and the case affords no aid.

We are satisfied, upon a view of the entire will and the reasoning of Mr. Justice Johnson in *Daly's Lessees* v. *James*, 8 Wheat. 539, and the Court in *Miller* v. *Meetch*, 8 Pa. St. R. 424, that it was not the intention of the testator to limit the sale to one year after his decease, and that the power to sell still continues.

The order refusing an injunction is therefore affirmed.