[No. 16048. Department Two. January 8, 1921.]

*In the Matter of the Estate of* MARY H. ABRAMS.
VASHTA McCLURE, *Appellant,* v. ROBERT ABRAMS, *etc.,
et al., Respondents.*[1]

EXECUTORS AND ADMINISTRATORS (3, 156) — SALES — POWERS AND
JURISDICTION OF COURT UNDER NONINTERVENTION WILL. The probate
court has authority to order a sale of real estate upon public notice,
upon application of the executor of a nonintervention will, in view
of Laws of 1917, p. 684, § 146, providing that an executor of a non-
intervention will *may* sell property without order of court if author-
ity is given in the will, and p. 706, § 219, declaring the intention to
authorize the courts in probate to settle estates, and § 220, providing
that, in exercising the jurisdiction and powers granted, the court
may give such notice as may be considered proper or necessary.

WILLS (75)—CONSTRUCTION—ESTATES IN TRUST—POWER OF DIS-
TRIBUTION—LIMITATION AS TO TIME—EFFECT. Failure of executors to
sell property within the five years fixed in a will will not terminate
the trust, where the property was devised in trust for named de-
visees, and the necessity for making the sale continues.

EXECUTORS AND ADMINISTRATORS (120, 133)—SALES UNDER ORDER
OF COURT—NOTICE—SUFFICIENCY—VACATION OF SALE. An executor's
sale of real estate at prices below the present appraised value will
be set aside at the instance of interested parties, where notices of
sale contained imperfect descriptions of the property and no title
of the cause, and some of the notices were unsigned and did not
mention the date or place of sale and were not published more than
ten days; in view of Laws of 1917, p. 678, § 127, prescribing the
requisites for the notice and publication for three successive weeks.

Appeal from an order of the superior court for King
county, Hall, J., entered April 13, 1920, confirming an
executor's sale of real estate, after a hearing on objec-
tions thereto. Reversed.

*F. C. Kapp,* for appellant.

*W. H. Beatty* and *Hastings & Stedman,* for respond-
ents.

[1]Reported in 194 Pac. 787.

MITCHELL, J.—Mary H. Abrams died in Seattle, Washington, on August 24, 1914, leaving a nonintervention will. Surviving her were her husband, their six children, and a number of grandchildren. The will was admitted to probate on August 31, 1914. The first paragraph of the will describes a tract of land on Lake Union, King county, which she declared to be her separate property. The second paragraph of the will directs the payment of debts and funeral expenses. The third paragraph of the will is as follows:

"Third: I give and bequeath to my dear husband Robert Abrams (or if deceased, in his place and stead to my dear son Robert W. Abrams) and Joseph Allen Calwell, both of Seattle, Washington, or the survivor of them, to their or his heirs, executors and administrators, the real estate described in paragraph First hereof, to be held by them as trustees and as trustees only upon the following trusts: to cause said property to be sold within a period of time not exceeding five (5) years from the date of my decease, and to pay over the proceeds thereof or therefrom, with any accumulation or accumulations, to the following persons in the following proportions, to-wit:

"1. To my dear son Richard H. Abrams, one-seventh thereof. 2. To my dear son Robert W. Abrams one-seventh thereof. 3. To my dear son Norman B. Abrams one-seventh thereof. 4. To my dear daughter Mary Lawley of Boston, in the County of Suffolk and Commonwealth of Massachusetts, one-seventh thereof. 5. To my dear daughter Violet O'Donnell of said Seattle one-seventh thereof. 6. To my dear daughter Mildred Abrams of said Seattle one-seventh thereof.

"The foregoing six (6) payments I direct my said trustees herein nominated to make forthwith to the beneficiaries named above as soon as funds come into their or his hands from the disposition, so as aforesaid hereinabove directed to be made of the said property described in paragraph First hereof.

"7. To my grandchildren living at the time of my decease, a one-seventh interest therein, in equal proportions, share and share alike, to each his or her proportionate share in said one-seventh interest, with the accumulation or accumulations thereof and therefrom, payment to be made thereof however only when each attains and as each attains the age of twenty-one (21) years and to that end I therefore authorize and direct my said trustees, or the survivor of them, their or his heirs, executors and administrators, to invest and re-invest the legacy and bequest given to them in trust for my said grandchildren by Section 7 of Article Third of this will, in sound investments, and I give to them as such trustees or the survivor of them their or his heirs, executors and administrators, full power and authority to sell both real estate and personal estate in which said interest or any part thereof may be invested or reinvested, at public auction or private sale and to sign and deliver instruments of transfer which may be legally necessary and proper. I direct that the purchaser or purchasers at any such sales both from my said executors or executor, trustee or trustees, or their survivor, shall not be required to see to the application of the purchase-money, and I also declare that the receipts of my executors or trustees or their survivor to all persons whatsoever for all moneys, securities or effects paid or delivered to such trustees or executors, or their survivors, shall exonerate the persons taking the same from all liability to see to the application of the moneys, securities or effects therein mentioned."

Robert Abrams and Joseph Allen Calwell, the persons named in the will, promptly made and filed their oaths of office as executors. An inventory sworn to by both of them was duly filed showing only the real property on Lake Union, described in paragraph one of the will. An appraisement of the property was made and filed. Later, an order was made and entered declaring notice to creditors had been duly given, that the inheritance tax due the state had been paid and

that the estate was solvent. Considerable friction soon arose and continued between Abrams and Calwell as to the management of the estate, which was brought to the attention of the court, and finally on June 21, 1915, Calwell filed his written resignation

"as one of the executors of the estate of Mary H. Abrams, deceased, and hereby represents that the remaining executor, Robert Abrams, is in the position, and competent to complete the administration of said estate so far as the duties of an executor are required."

On the same day, an order was entered accepting the resignation and relieving him from any further care as executor in the management of the estate. It was further adjudged to be unnecessary to appoint a successor of Calwell as co-executor.

It appears that, without the intervention of the court, a portion of the real estate mentioned in the inventory was sold for an amount wholly insufficient to pay the debts and charges against the estate. Thereafter, upon petition by Robert Abrams, the superior court ordered a sale of the remainder of the property and confirmed the sales made under the order. The order of sale and the orders confirming the sales were made over the objections of Vashta McClure who had succeeded to the rights of Robert W. Abrams, one of the children, in the estate by a conveyance from him. The orders were made over the objections of Calwell, also, who appeared therein on behalf of his wife, Mildred Calwell, and as a trustee under the will notwithstanding his resignation as an executor. The property was ordered to be sold, and it was sold in four parcels, separately described and further designated in the petition and report of sales as parcels "A," "B," "C" and "D." The order approving and confirming the sales of parcels "A" and "B" in the sums of $775 and $975 respectively was entered on February

13, 1920, from which order no appeal has been taken. The order approving and confirming the sales of parcels "C" and "D," in the sums of $9,000 and $4,000 respectively, was signed in open court and entered on April 13, 1920, whereupon Vashta McClure gave notice in open court of appeal which she has perfected.

There is no bill of exceptions or statement of facts in the case. For the purposes of the sale of the real estate, all of the grandchildren of the testatrix who were minors, were represented by a guardian *ad litem*. Subsequent to the filing of the petition for the sale and prior to making the sales, by order of the court, there was a re-appraisement of the property by parcels as follows: "A" $1,500, "B" $1,000, "C" $14,825 and "D" $7,688.

The petition to sell the property, consisting of the four parcels, was filed in November, 1919, more than five years after the death of the testatrix. The petition was for a sale at public auction. In substance, it recited the terms and conditions of the devise of the properties subject to indebtedness and charges of administering the trust; that, by means of a general depressed condition of the real estate market during the five years, the real estate could not have been sold without great sacrifice; that it had not been advisable to sell any portion thereof, although efforts had been made to sell at reasonable prices, without success; that much discontent exists between the respective devisees, a number of whom desire that the property be converted into cash and distributed according to the terms of the will; and that the property should be sold at public sale.

On the day fixed for hearing the petition, appellant, by her counsel, appeared generally and objected to the consideration of the petition, alleging the court was

without jurisdiction in the matter because of the non-intervention character of the will and the order of solvency entered in the cause, and also for the further reason that the limit of five years mentioned in the will within which the property was to be sold had expired and that there was no longer any power or authority to sell the real estate or any portion of it—the trust having ceased to exist by expiration of the limitation of time mentioned in the will.

Upon the hearing an order was entered overruling the objections. It recites the taking of evidence. Findings were made which substantially conformed to the facts set out in the petition, among others, that Robert Abrams had personally made reasonable efforts, without success, to sell the property at satisfactory prices; and it was adjudged and decreed that the property be sold at public sale.

It is contended by the appellant that, as the will is a nonintervention will, therefore the superior court acting in probate had no jurisdiction whatever to entertain a petition for the sale of the real estate. A number of the earlier cases of this court are cited and relied on in support of the argument. However, we find no occasion to examine them for the purposes of this case. In the case of *Bayer v. Bayer,* 83 Wash. 430, 145 Pac. 433, after reviewing earlier cases of this court wherein generally proceedings in probate were commenced against executors acting under nonintervention wills, this court said:

"The statute itself provides, 'Such estates *may be* managed and settled' without the intervention of the court. It does not provide that they *must* be managed by the executor without the intervention of the court. There is nothing in the statute which prevents an executor from invoking the jurisdiction of the superior court, whether it be called the equity or probate jurisdiction, if he deems it expedient to do so."

And further in the same case it was said:

"The point we desire to emphasize is that there is a marked difference between a proceeding by a third party to require the executor of a nonintervention will to come into probate court, and a proceeding by the executor himself invoking the jurisdiction of such court."

Appreciating the doctrine of that case, the legislature in the probate code of 1917 (Laws of 1917, p. 642, ch. 156), after continuing the law as to nonintervention wills, with some added provisions not important here, and after providing, in harmony therewith, by p. 684, § 146, "when property is directed by will to be sold, or authority is given in the will to sell property, the executor *may* sell any property of the estate without the order of the court, and without any notice, etc.," it declared in § 219, p. 706:

"It is the intention of this act that the courts mentioned shall have full and ample power and authority to administer and settle all estates of decedents, minors, insane and mentally incompetent persons in this act mentioned. If the provisions of this (act) with reference to the administration and settlement of such estates should in any cases and under any circumstances be inapplicable or insufficient or doubtful, the court shall nevertheless have full power and authority to proceed with such administration and settlement in any manner and way which to the court seems right and proper, all to the end that such estates may be by the court administered upon and settled."

That is to say, the legislature has declared, and does intend, that the superior courts, in the exercise of their jurisdiction of matters of probate, shall have power and authority to settle estates. There is the possibility, for some purposes, of no need to apply to the court; but, in the event of an application by one en-

titled thereto, there can be no question of the power of the court, in the use of which power § 220 provides:

"In exercising any of the jurisdiction or powers by this act given or intended to be given, the court is authorized to make, issue and cause to be filed or served, any and all manner and kinds of orders, judgments, citations, notices, summons, and other writs and processes not inconsistent with the provisions of this act, which may be considered proper or necessary in the exercise of such jurisdiction."

Upon the other point in the objections, that the trust had ceased by the expiration of five years from date of the death of the testatrix within which to make the sale, this situation was of itself enough to invoke the aid and jurisdiction of the court, calling as it did for the construction of the will. The point, though presented in the assignments of error and in the brief, is not discussed by the appellant. It is, we think, without merit. By the terms of the will, the property was not devised to the ultimate beneficiaries, but to the two trustees in trust to be sold by them and the proceeds, subject to debts, charges and expenses, distributed, one-seventh to each of the six children and the other one-seventh to be invested and reinvested, with directions that the principal and accumulations thereon should be divided, share and share alike, to each of the testatrix's grandchildren living at the time of her death.

Where trustees are directed to sell within a time specified, the designation of time will in most cases be treated as directory merely, and the lapse of that time without their making any sale, where the necessity for the sale continues, appears not to terminate their power of sale. 26 R. C. L. (Trusts) § 141, p. 1290. Or, as was, in effect, said in *Kidwell v. Brummagim,* 32 Cal. 436: A provision contained in a will directing

the executor to sell property within one year, is merely directory, and does not limit the exercise of that power to that period, where power to sell is coupled with, and is subsidiary to, certain express trusts, and is given as the means and the only means, of carrying out those trusts. That rule is applicable in the present case, and we are satisfied the superior court had the power and jurisdiction to make the order of sale, that the objections were properly overruled, and that the order was proper under the circumstances shown by the petition and order.

Upon the executors' report of the sale, the appellant filed objections to the confirmation upon the same grounds urged against the petition for the order of sale, and for the additional reason that, as shown by the record, the court had no jurisdiction to confirm the sale. Afterwards and before the report was heard by the court, the objections were made more explicit by reciting that the notice of the sale was not given as required by the law in several important particulars. There is a dispute as to whether the later objections were called to the attention of the court, and there is no statement of facts to settle the controversy. However, the later specific objections were filed on April 12, 1920. The order confirming the sale though dated April 12 was not filed until April 13, 1920. It appears to have been signed and filed in open court, whereupon notice of appeal was given at that time. The order recites that objections were made by the appellant, and it appears those first filed were sufficient to present the objection later made more specific, because the things objected to appeared upon the face of the report. They are shown by affidavits of publication filed with the report and set out in full therein, and it is so recited in the court's order. The order of sale

contains no direction as to the place at which the sale shall be made, nor as to what notice should be given of the sale. It appears that, without any fault of, and in the absence of his attorneys, the executor himself looked after the preparation of the notices and directed the publication thereof. As shown by the report and affidavits of publication, they contained imperfect descriptions of some of the property; there were four different kinds of notices published, in each of which part of the property here involved was imperfectly described; none of them mentions the title of the cause, nor of the court ordering the sale; two of them are unsigned, one of which does not mention the date of sale nor the place at which it will take place; three of them mention the hour of the sale which was made on the property; and altogether they were published in two different newspapers, neither notice having been published more than ten days.

Section 127 of the probate code (Laws of 1917, p. 678, ch. 156) provides:

"When real property is directed to be sold at public auction, notice of the time and place of such sale shall be posted . . . and such notice shall be published in some newspaper published in said county, if there be one . . . once a week for three successive weeks before such sale, in which notices the property ordered sold shall be described with proper certainty. . . . All sales of real estate at public auction shall be made at the front door of the court house of the county in which the lands are, unless the court shall by order otherwise direct."

Whatever may be said of the insufficiency of any one of the irregularities complained of to overcome timely objections to the confirmation of the sale, we are satisfied that, altogether, they constitute such substantial departures from the requirements of the

statute that, considered in connection with the reduced sale prices compared with the present appraised values, they must be taken to be good and valid reasons to sustain the objections of an interested party to the confirmation of the sales.

Reversed and remanded with directions to set aside the order confirming the sale of the two parcels spoken of as tracts "C" and "D."

HOLCOMB, C. J., MOUNT, MAIN, and TOLMAN, JJ., concur.