[No. 19361.   Department One.   October 5, 1925.]

SUSIE LEE HANCOCK, *Respondent,* v. F. M. MULDOON, *as Administrator, et al., Defendants,* NORTHWEST TRUST & STATE BANK, *as Trustee, Appellant.*[1]

TRUSTS (31)—MANAGEMENT OF TRUST ESTATE—SALES BY TRUSTEE —COMPLIANCE WITH TRUST.   A decree providing that a trustee of property shall forthwith sell and reduce the same to cash within six months, is directory and not mandatory, especially where it further provides that, in case of his failure or inability to make private sale within that time, he shall sell the same to the highest bidder in the manner provided by law.

SAME (30)—MANAGEMENT OF ESTATE—DILIGENCE AND GOOD FAITH —EVIDENCE—SUFFICIENCY.   Findings that an estate had been mismanaged are not supported by evidence that the trustee did not sell the same at once as directed by an order of the court, but held the same for thirteen years, until it was practically absorbed by assessments, taxes and expenses, where the trustee's testimony that his failure to sell was due to the objections of the beneficiary was corroborated by letters, the unfavorable market and other circumstances, no suit was instituted to compel him to sell, and it appears that he acted in good faith.

SAME (44-2)—COMPENSATION—COMMISSIONS ON SALE OF PROPERTY —CHARGES—ADVANCES BY TRUSTEE—INTEREST.   A trustee in charge of the estate of a beneficiary should be allowed commissions on sales made, and interest on money advanced for the benefit and preservation of the estate.

JUDGMENT (198)—RES JUDICATA—PERSONS PARTICIPATING IN ACTION OR DEFENSE—TRUST—SETTLEMENT OF ACCOUNT.   A beneficiary of a trust estate, appearing and defending a suit brought to charge the estate, is bound by the judgment charging the estate with the claim.

TRUSTS (44-1)—MANAGEMENT—CHARGES—COST OF UNAUTHORIZED ACTS.   The trustee of an estate who makes an unauthorized sale of lands is properly charged with the costs and damages recovered by the disappointed purchaser.

TRUSTS (44-1, 44-2)—COMPENSATION—ADVANCES—ATTORNEY'S FEES —ALLOWANCE—CONCLUSIVENESS.   The court having allowed an at-

[1]Reported in 239 Pac. 546; 241 Pac. 684.

torney's fee to a trustee, payable from the proceeds of a sale, after a hearing at which the beneficiary was represented, the beneficiary is bound by it, and it is error for the court to subsequently reduce it on final settlement.

Cross-appeals from a judgment of the superior court for Island county, Alston, J., entered January 15, 1925, in favor of the plaintiff, after a hearing upon objections to the final account of a trustee. Modified on defendant's appeal.

*Hartman & Hartman,* for appellant.

*Rummens & Griffin,* for respondent and cross-appellant.

Askren, J.—The Northwest Trust & State Bank was appointed in 1909 as trustee for Susie Lee Hancock, who was the beneficiary of the estates of her father and mother. These estates had been in probate for a great number of years, and at the suggestion of the beneficiary the trust company was appointed as trustee, with the evident intent that the property should be disposed of and the legacies to the beneficiary provided for. The order of appointment, after describing the property and making provision for the payment of debts and expenses, has this provision:

"That the said trustee is hereby directed and empowered to sell forthwith either at private or public sale all of the real estate . . . It is further ordered and adjudged that the said trustee shall reduce said real estate to cash within six months from and after the date of this decree, and that in case of its failure or inability to make private sale of said property within said six months, that the same or any part thereof shall, on request of any of the beneficiaries, be disposed of to the highest and best bidder therefor, after due notice given in the manner provided by law for the sale of similar property by administrators."

There were other beneficiaries besides the plaintiff, but their interests were sufficiently remote that it did not appear that there was any likelihood of there being any residue after plaintiff had received that which was devised to her.

The property which the trustee took over was vacant and non-income bearing property, and comprised a lot in the Denny Regrade section of Seattle, lots in Olympia and Port Townsend, and approximately 250 acres of farm land in Island county. While the property in Island county and the lot in Seattle were valuable, the lots in Olympia and Port Townsend were only nominally so. No sale was made during the six months following the appointment.

In July, 1910, the beneficiary signed a letter prepared by the trustee, as follows:

"July 23, 1910.
"To the Northwest Trust & Safe Deposit Co.,
"With reference to the provision in the decree of the superior court, dated July 14, 1909, covering properties in which I am interested, to the effect that six months thereafter said property shall be disposed of to the highest bidder at auction if not previously sold by private sale, I beg to state that it is and has been my judgment that it should not be offered for the present.                                "Susie L. Hancock."

In 1911, a portion of the Island county property was sold for the sum of $3,600. This sale was made through the instrumentality of the beneficiary, who secured the purchaser.

On October 23, 1911, the trustee wrote to the beneficiary, saying that it had received an offer from Calvin Phillips & Company of $5,000 for the Island county property, but that it had been advised the price offered was too low, believed that by declining the offer it would ultimately receive a larger offer from the same firm, and if not, it could be sold to other parties for a better

figure, and suggested that it proposed to decline the offer. The following May, the trustee again wrote to the beneficiary, advising her that they had received an offer of $35 an acre for 188 acres in Island county, but that a Mr. Parker, who was interested, believed that the property could be sold at $50 per acre, and that the trustee would like to have the view of the beneficiary upon the matter. In August of the same year, the trustee wrote not only to the immediate beneficiary, Susie Lee Hancock, but to one of the remote beneficiaries, S. D. Crockett, and enclosed a report from Parker, in whose hands the Island county property had been placed for sale, advising them that Parker's letter seemed to justify holding the property for a price of $50 per acre. Parker's report went into detail as to the value of the land, the possibility of drainage, the expense thereof, the amount, character and value of crops to be raised thereon, and called attention to the further fact that Calvin Phillips & Company of Seattle held the adjoining land, and expressed the belief that the land should bring at least $50 per acre.

The land, however, was not sold until 1917, when a sale was made to the Greenbank Company, which appeared to be a holding company for Calvin Phillips & Company, for $2,750. In the meantime a sea wall had broken and allowed the land to be overflowed, and this materially reduced its value. This sale was made by the trustee at private sale and without any order of the court. As a part of the transaction, it was understood that a suit should be brought to quiet title. When this suit was brought, the beneficiary appeared and asked to have the sale set aside upon the grounds that the price received was inadequate, and that she had not ratified the same.

Upon the trial, the court made a memorandum decision in which it determined that the trustee, not hav-

ing sold the property at private sale within the six months provided for in the decree, could not thereafter sell it at private sale, but must have permission of the court, and further held that the court was very much in doubt as to whether the beneficiary possessed sufficient mental capacity to handle her own affairs, and therefore could not hold that she had ratified the sale. The court found, however, that the property was not sold at a price much below its actual cash value, and also stated that he had no doubt whatever of the good faith of the trustee in handling the property. A decree was entered setting aside the sale, finding that the trustee in making the sale acted in good faith, allowing the Greenbank Company to recover from the Northwest Trust & Savings Bank, as trustee, the money paid as consideration for the property, and authorizing the trustee to charge against the estate the sums which, under the decree, it was obliged to repay to plaintiff, and providing further that the entry of the decree was without prejudice to the rights of the Greenbank Company to recover from the bank, as trustee, any sums it had expended in attempting to perfect its title. Thereafter the Greenbank Company brought a suit in King county to recover its money expended in that connection, and judgment was entered in the sum of $444.57, and costs.

At about the time of the appointment of the trustee, a large assessment was placed upon the property in Seattle by reason of what was known as the Denny Regrade, and upon all of the property in question assessments and taxes kept piling up from year to year. There being no money in the estate, the trustee advanced from its own funds the money to take care of these expenses. The beneficiary also required funds for her personal use and advances were made from time to time by the trustee from its own funds. The

beneficiary also mortgaged to the trustee her home in Seattle. Later on, the mortgage was assigned to other parties, and in 1918 this property was lost through foreclosure.

In 1922 the trustee petitioned the court for an order to sell at public auction all of the properties of the estate, setting forth all of the circumstances and facts surrounding the trusteeship, and showing to the court that the estate was rapidly being dissipated through the continual piling up of taxes and assessments. Upon such an order being made, the Island county property was sold to the Greenbank Company for $4,000, the lot in Seattle for $8,500, and the Olympia and Port Townsend property brought the sum of $5. The beneficiary objected to the confirmation of the sale, but it was confirmed by the court as being fair and just. Later, the trustee filed its final account, setting forth the amounts received upon the different properties, the expenses and all the financial transactions connected with the estate. The beneficiary filed exceptions and a hearing was had thereon.

The trustee, in its final report, asked to have credited to its account the sum of seven per cent interest upon the amounts that were advanced by it to the beneficiary for her own personal use, and also upon the amounts which it had advanced for the payment of taxes and assessments upon the different properties of the estate. The report showed that, when the advances to the beneficiary, with interest thereon, had been deducted, there would be a net loss to the trustee of the sum of approximately $2,700, and asked that a certain trust fund amounting to about $1,600, which had theretofore been placed in the name of the beneficiary, be returned to it to be applied upon the deficiency.

At the hearing upon the objections to the final account, the evidence of but two witnesses was taken—

that of the beneficiary and a Mr. Shorrock, manager for the trustee. The beneficiary testified that, from the date of the trustee's appointment, she had constantly and regularly urged the sale of all the property; that she needed funds, and that the trustee constantly refused to sell the property at her request during the thirteen years of its trusteeship. The testimony of Mr. Shorrock was to the effect that the beneficiary constantly resisted the sale of any of the properties at prices that could be obtained for them; that, while she was always anxious to sell, she demanded a price higher than could be obtained.

The court, at the close of the hearing, concluded that the estate had been mismanaged, struck from the items in the report the charges for interest upon advances made by the trustee for the payment of taxes and assessments; reduced the item of $1,000 for attorney's fees paid to the trustee's attorneys to $500; struck the item of $1,026.44, being the loss which the estate suffered by reason of the sale of the Island county property to the Greenbank Company in 1917, which was later set aside by the court; struck the item of commissions in the sum of $672.62, and a further item of miscellaneous expenditures, and gave the beneficiary judgment against the trustee in the sum of $4,057.89. The trustee has appealed from that decision, and the beneficiary has cross-appealed from the failure of the court to allow a larger recovery.

The superior court was of the opinion that the estate was mismanaged by the trustee, upon the ground, as nearly as we can gather from the court's memorandum decision, that the failure to reduce the estate to cash forthwith as provided in the order of appointment, and holding it for a greater period of time, was, in fact, speculating with the estate, and that the mere fact that the trustee received an estate in 1909 which, when

finally converted into cash, yielded a net return to the beneficiary of a very small proportion of its original appraised value, was evidence of mismanagement. But we think this does not necessarily follow. A careful and painstaking review of all the written documents, together with the testimony offered at the time of the hearing, does not substantiate the suggestion that the trustee was in any wise desiring to speculate upon the final outcome of this estate. Its appointment came at a time when land values were all very high in the western part of the state of Washington. There is nothing to indicate that any offer was received within the first six months after the appointment, so that there can be no negligence or mismanagement on the part of the trustee in failing to have the property sold within that time.

While the decree provides that the property "is to be sold forthwith and reduced to cash within six months from and after the date of this decree," yet such provisions are quite generally construed as being directory and not mandatory. *In re Abram's Estate,* 114 Wash. 51, 194 Pac. 787. That this is the view that ought reasonably to be given to this provision is made more manifest by the provision immediately following, which provides that, "in case of the trustee's failure or inability to make private sale of the property within six months, that the same or any part thereof shall, on request of any of the beneficiaries, be disposed of to the highest and best bidder therefor, after due notice given in the manner provided by law for the sale of similar property by administrators." It cannot be contended that it would have been the duty of the trustee to sell this property within six months unless a bid was received that to the trustee and to the beneficiary was deemed to be a fair and reasonable price. Orders of sale like this are not made with the thought that the

property shall be sacrificed, but that the trustee shall diligently endeavor to make a sale at the reasonable value of the property, to the end that the estate shall be conserved.

It is quite true that, looking back upon the conditions since 1909, and having the benefit now of all the events that have since transpired, it is easy for all to see that the estate of the beneficiary would have been benefited by the sale of these properties within the six months' period, because undoubtedly they would have brought a higher price even at sacrifice sale than that which was ultimately received after the payment of taxes and assessments over a long period of time. But the failure so to do is not mismanagement. The officers of such trustees as the one whose actions are here questioned are not endowed with any greater ability to foresee the final outcome of such matters than are the general run of individuals. It is no uncommon thing for thousands of pieces of vacant, non-income property to be held in the hope of a better price until the original cost thereof has been doubled or trebled, and we think that, if a trustee acts honestly, feeling that the price offered is inadequate, or, if the beneficiary does not wish a sale made at the price offered, the trustee is not bound at his peril to make a sale contrary to the wishes of the beneficiary. The trustee should be chargeable only with the final result of the handling of the estate, where there has been bad faith or negligence upon its part, but when it acts with that care and caution that like trustees display, and defers to the wishes of the beneficiary whom it represents, it should not be penalized therefor.

We have not overlooked the fact that the beneficiary testified that she always urged the sale of this property, and tried to force a sale, but that the trustee refused to sell. Opposed to this testimony is that of the

manager of the trustee, which seems clear and convincing to us. The testimony of the beneficiary cannot be given too much weight, when viewed in the light of the memorandum decision of the trial court in the Greenbank case, the same judge who heard the final account, when he said that the mental condition of the beneficiary was such that he doubted very much her understanding of the things that were done. The letter signed by the beneficiary on July 23, 1910, which was shortly after the expiration of the first six months' period, which we have heretofore set out in full, in which, after referring to the fact that the property had not been sold during the time provided in the decree, says: "It is and has been my judgment that it should not be offered for the present," is very strong corroborative evidence of that offered by the trustee to the effect that she did not feel that the price obtainable was adequate.

Another thing that should not be overlooked is that this trusteeship ran from 1909 until the date of the sale at public auction in 1922, and that, during the whole period of thirteen years, although the record indicates that at different times the beneficiary had able counsel, there never was any action brought seeking to compel the trustee to sell this property. Manifestly, if she were desirous of having the property sold, and the trustee refused to sell it, it would have been a very simple matter to apply to the court, and, if the showing warranted it, an immediate sale would have been ordered. We cannot conclude, therefore, that the estate was mismanaged.

It follows that the commission upon the sale of the property which the court struck from the final account should have been allowed. Nor can we agree with the trial court that the item of interest should have been stricken. The sums of money upon which interest was

charged were advanced by the trustee to pay taxes and assessments on the property, and if these had not been promptly paid they would have drawn a large rate of interest, up to twelve or fifteen per cent. The advancement of these funds was for the benefit and preservation of the estate, and we see no reason why money advanced by the trustee for the preservation of the estate should not be returned with interest. The right to charge interest on funds advanced to an estate is well recognized. 39 Cyc. 329. However, the trustee waived any interest in excess of six per cent. The amount of this, therefore, should be reduced from $4,569.62 to $3,916.82.

Much reliance is placed by the beneficiary on the case of *Magruder v. Drury*, 235 U. S. 106; but we think that decision is not in conflict with our holding that interest is a proper item to be charged.

In that case the trustee purchased for the estate from his own firm certain securities. He desired the commission upon the purchases as well as his regular commissions received in handling the income and principal of the estate. The court held that it amounted to a double charge and tended to place the trustee in an adverse position to his ward, since he was purchasing on account of another that which he sold on his own account. Here there is no adverse position, for no commission is sought on moneys advanced, but merely that interest should be paid on those sums advanced for the preservation of the estate.

The loss which the estate suffered by reason of the sale of the Island county property to the Greenbank Company in 1917, amounting to $1,026.44, which the court struck as being an improper charge, was composed of the items of loss which were adjudicated by the decree of the court in the quieting title case; and the further item of $444.57, the amount of the judgment

in King county court wherein the Greenbank Company sued the trustee for money expended in attempting to perfect title, together with $100 attorney's fees, $2 appearance fee, or $546.57 in all. It is claimed by the trustee that all of these items were adjudicated by the court in 1917, and that no appeal having been taken therefrom they are binding upon the beneficiary; but we think that cannot be true as to the item of $546.57.

In the quieting title case, the beneficiary appeared by her own attorneys, and, having contested that action, was bound by the decree of the court which authorized the trustee to charge against the estate the sums which it was obliged to pay out under that decree. The mention made in the decree as to the suit later brought by the Greenbank Company to recover sums expended in perfecting title only provides that the quieting title decree is without prejudice thereto. When the suit was brought to recover damages in perfecting title, the beneficiary did not contest it upon her own behalf. The appearance there made was by the trustee, whose interests, so far as that case determined who should pay the loss under any judgment therein obtained, would be adverse to the beneficiary. Therefore, she would not be bound by it, and since the court found in 1917 that the trustee had no right to make the sale, the loss should fall on the trustee, and the amount of the judgment, with costs in the sum of $546.57, was properly stricken from the final account, leaving a charge on this item of $480.

We think the court was also in error in reducing the attorney's fee from $1,000 to $500. The allowance of $1,000 had been regularly made by the court in 1922. The order of sale reads, among other things, that the trustee,

"is further obligated to pay for the services of attorneys who have assisted, advised the petitioner on

legal matters, and conducted litigation for said trustee, and a reasonable sum to be allowed as such attorney's fee is $1,000, which should be payable from the first proceeds of sale. Now, therefore, it is by the court Ordered, Adjudged and Decreed . . . that the proceeds of sale be applied first to the payment of the costs and expenses of sale; second to the attorney's fees in the sum of $1,000 hereby allowed; . . ."

The beneficiary was represented in the matter of the order of sale by her attorneys, and therefore was bound by the decree of the court.

The cross-appeal raises no new issues. Cross-appellant urges that the judgment of the trial court should have been in a much larger amount, but the argument upon which it is predicated is based upon the view of the facts as taken by the trial court, and with which we fail to agree.

The items stricken from the final account which we think should be added thereto are as follows:

Interest ....................$3,916.82
Attorney's fee ...............   500.00
Commissions .................   672.62
Greenbank case ..............   480.00      $5,569.44

The judgment of the superior court, therefore, instead of being $4,057.89 in favor of the beneficiary, should be reduced in the sum of $5,569.44, leaving a deficiency in favor of the trustee of $1,511.55. Inasmuch as the trustee has disclaimed in this court any desire for a deficiency judgment against the beneficiary, the cause is reversed with instructions to modify the final account in accordance with this opinion; to permit the trustee to reimburse itself from the trust fund mortgage, but providing that the trustee have no judgment for the deficiency of $1,511.55. It is so ordered.

Tolman, C. J., Main, and Parker, JJ., concur.

ON REHEARING.

[Department One. December 28, 1925.]

PER CURIAM.—The petition for rehearing calls the court's attention to an inadvertent statement of fact in the Departmental opinion. It was there stated that the trial court had reduced the attorney's fees five hundred dollars. This was erroneous, for the trial court, after reducing the allowance, later restored it to the original figure. The allowance of $500 attorney's fees, therefore, will be stricken from the opinion.

This does not affect the ultimate result inasmuch as no judgment was asked by appellant; and with this allowance stricken, there still remains a deficiency of $1,011.55. However, in the interests of accuracy, this correction is made. In all other respects, the petition for rehearing is denied.