E. GERTRUDE DUDLEY, administratrix, *vs.* BURTON E. DUDLEY & others.

Suffolk.    October 27, 1936. — May 25, 1938.

Present: RUGG, C.J., FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Executor and Administrator,* Duty of fidelity, Accounts, Real estate of decedent, Payments.

A method of procuring the best possible price for mortgaged real estate of a decedent to pay debts and administrative expenses, adopted, instead of proceeding by license of court, and carried out in good faith by the administrator of necessity because of a stubborn and uncooperative attitude of one of the heirs in possession of the property, by purchasing the mortgage and taking an assignment thereof in the name of a nominee, foreclosing it, causing the nominee to purchase

at the sale and to resell at an advanced price, all for the benefit of the estate, in the circumstances was *held* properly to have been approved by the Probate Court where the administrator accounted for all money received from the transaction; but *it was stated* that such method was not ordinarily to be approved as proper.

An administrator who in the circumstances properly liquidated mortgaged real estate of his decedent by causing a purchase of the mortgage and its foreclosure by his nominee and purchase and resale of the property by the nominee, and who properly accounted for sums received, was entitled to credit for the price paid for the mortgage and interest thereon; for expenses of foreclosure of the mortgage, of defending his nominee's title as purchaser, of ejecting a tenant, of collecting rents and of reselling; and for taxes and fire insurance premiums on the realty paid while the nominee held title in connection with the resale; but not for taxes assessed after the intestate's death and not shown to have borne any relation to the transaction carried out by the administrator for the benefit of the estate.

PETITION in the Probate Court for the county of Suffolk for the allowance of an amended first account of an administratrix.

The account was allowed by, *Dillon, J.*

The case was submitted on briefs in this court.

*B. E. Dudley, pro se.*

*F. H. Harding,* for the petitioner.

FIELD, J. Mary E. Dudley died October 2, 1926, intestate, leaving no husband, and, as her heirs and next of kin, four daughters and one son. One of the daughters, E. Gertrude Dudley, was appointed and qualified as administratrix on December 27, 1929. From a decree allowing her amended first account for the period beginning December 27, 1929, and ending September 5, 1935, another daughter, Chlora R. Pulsifer, and the son, Burton E. Dudley, appealed to this court. The case comes before us with a report of material facts by the judge and a report of the evidence.

The inventory shows no personal estate, and real estate in Wakefield appraised at $2,600. By schedule A of the account before us the administratrix charges herself with personal property, $67.50, and "Amounts received from income gain on sale of personal property over appraised value, and from other property, as follows: 1 Rec'd from

Sale of Wakefield property at foreclosure sale . . . . . . 1800.00   2 Rec'd from resale of Wakefield property . . . . . 700.00     3 Rec'd from rent of Wakefield property including Court costs . . . . . 334.70     $2902.20." Schedule B shows payments, charges, losses and distributions aggregating $2,643.77, and schedule C shows $258.43 on hand. The probate judge in his report of material facts found specifically that the items in schedule B "are fair and reasonable in view of all the circumstances," and that the amount set forth in schedule C is accurate.

The appellants contend that the items included in schedule A, other than the item of $67.50, are improperly included therein, that item 13 of schedule B — $100 for "attorneys' fees connection with probate" — is excessive, that item 14 — $200 for the services of the administratrix — should not be allowed because of maladministration of the estate, that items 2 to 5, 15 to 18, and 20 to 25, which are expenditures in connection with the real estate in Wakefield, including taxes for the years 1928, 1929, 1931 and 1932 (aggregating $348.07), fire insurance ($24.60), interest on the mortgage ($40.50), paying off the mortgage ($651), expenses of foreclosure and sale ($115.60), expense of sale of property ($19.50), and expenses of defending a suit in equity brought by Burton E. Dudley, in which he attacked the foreclosure sale, ($300) and of prosecuting an action for rent ($145) and an action of ejectment against said Burton E. Dudley ($347.90) are not properly chargeable to the estate.

The real estate was owned by the intestate at her death subject to a mortgage. The equity in such real estate passed to her heirs and not to the administratrix, subject, however, to liability for the payment of debts and charges of administration if, as was the fact, the personal property was insufficient for such payment. Evidently this was a proper case for the granting of a license to sell the real estate to pay such debts and charges. See G. L. (Ter. Ed.) c. 202, §§ 1–20. No such license was granted. Though a petition for such a license was filed, it was not pressed. But a different method of disposing of the real estate was followed by the administratrix.

This method was as follows: Through persons acting in her behalf the administratrix purchased the mortgage, foreclosed it, bought the real estate at the foreclosure sale and thereafter resold it. The findings of the judge with respect to the transaction are these: "The property was old and considerably run down. The appellant [obviously meaning the appellant Burton E. Dudley] occupied said property. There was a first mortgage on said property held by Bertha Kiernan as administratrix of the estate of Patrick B. Kiernan. Fearing that a reasonable price could not be obtained for said property at public auction, the administratrix through her representatives purchased said mortgage, and later foreclosed it through her representatives. The appellant was present at said foreclosure. The representatives of the administratrix were the highest bidders and the property was sold to them for the sum of $1,800. Thereafter the administratrix feeling that a higher price could be obtained, put the property in the hands of various real estate brokers, and later received an offer of $2,500. The property was subsequently sold for that amount, and all of the moneys received from said sale and resale are accounted for in Schedule A of said account. . . . The representative of the administratrix, who had purchased the property at the foreclosure sale at the direction of the administratrix, proceeded to bring action to eject the appellant from said premises at the direction of said administratrix. These proceedings were ultimately appealed to the Supreme Judicial Court, which court decided against the appellant. See *Barry* v. *Dudley*, 282 Mass. 258. In a subsequent action brought against the surety on the bond filed by the appellant in the ejectment action, a sum was recovered as rent of said premises and is properly accounted for in . . . Schedule A. . . . The appellant because of a stubborn and uncooperative attitude in respect to said property, by his refusal to allow inspection of said property by prospective purchasers, and his actions in tearing away the stairway approaches to said premises, erecting barbwire and posting 'No trespassing' signs, made it necessary for the administratrix to adopt the method she did

in order to get the best possible price for said property."
These findings of fact, as the evidence discloses, are not
plainly wrong.

The ground of the appellants' objections to the allowance
of the account is primarily the method adopted by the
administratrix for disposing of the real estate. As such
administratrix — though she was also one of the heirs at
law and next of kin — she was bound to act in good faith
solely for the interests of the estate and could not properly
derive any personal advantage for herself adverse to those
interests. *Hayes* v. *Hall*, 188 Mass. 510, 514. *Taylor* v.
*Jones*, 242 Mass. 210, 215. *Vinal* v. *Gove*, 275 Mass. 235,
241–242. Even if the administratrix, as well as the heirs,
had the power to redeem (see G. L. [Ter. Ed.] c. 244, § 33;
*Williams* v. *Van Dam*, 246 Mass. 61, 63), she had no assets
of the estate available for that purpose. Consequently she
was not precluded from purchasing the mortgage and tak-
ing an assignment thereof which would not effect its dis-
charge, if her acts in so doing were not injurious to the
estate and she accounted fully for any profit derived from
the transaction. *Sanderson* v. *Edwards*, 111 Mass. 335,
337, 338. *Morse* v. *Bassett*, 132 Mass. 502, 509. See also
*Vinal* v. *Gove*, 275 Mass. 235, 241. And the facts found
by the judge, which are not plainly wrong, show that the
administratrix, through her representatives, purchased —
not redeemed — the mortgage and that such purchase was
in good faith and beneficial, rather than injurious, to the
estate, and was not in violation of the rights of any person
interested therein. Moreover, the administratrix is at-
tempting, in this account, to account fully for any profit
derived from such purchase of the mortgage, the fore-
closure thereof, and the resale of the real estate purchased
by her at the foreclosure sale.

In the light of the law and facts above outlined we con-
sider the specific items in the account. Though no license
to sell the mortgaged real estate for the payment of debts
and charges of administration was obtained (G. L. [Ter.
Ed.] c. 202, §§ 1, 2), the administratrix — or her repre-
sentatives — as assignee of the mortgage, had power, by

virtue of the power of sale therein contained, to transfer legal title to the mortgaged real estate to the purchaser at the foreclosure sale, and the surplus proceedings of the sale would become assets in the hands of the administratrix, subject to the payment of debts and charges of administration, to be accounted for by her in her account. See *Varnum v. Meserve*, 8 Allen, 158; *Newhall* v. *Lynn Five Cents Savings Bank*, 101 Mass. 428, 431. The administratrix, in effect, accounts for such surplus proceeds by including the entire amount received at the foreclosure sale ($1,800) in schedule A of the account, and the amount of the mortgage ($651), interest thereon ($40.50), and expenses of foreclosure ($115.60) — found to be reasonable — in schedule B. All of these items, therefore, were allowed properly.

By purchasing the real estate. at the foreclosure sale the administratrix, or her representatives, acquired legal· title thereto. But for the fiduciary relation of the administratrix to the estate, and to the persons interested therein, she would have obtained an absolute title to such real estate.· By virtue of her legal title, however, she had the power to deal with the real estate as her own, subject to any equities in favor of the estate or of any person interested therein. See *Sanderson* v. *Edwards*, 111 Mass. 335. As owner of the legal title she could transfer such title to a purchaser without obtaining a license to sell the real estate, subject, however, to any equities which might continue to attach thereto in the hands of the purchaser. The administratrix has made such a transfer, which has not been set aside, and, so far as the record discloses, could not be, even if the validity of the purchaser's title was open to attack in this proceeding. See, however, for cases in which the validity of the foreclosure sale was drawn in question, *Barry* v. *Dudley*, 282 Mass. 258; *Sheehan Construction Co.* v. *Dudley*, 299 Mass. 48; *S. C.* 299 Mass. 51. The proceeds of such resale, however, in the hands of the administratrix, to the extent of any profit for which she is bound to account, by reason of her fiduciary relation to the estate, stand in place of the real estate acquired by her at the foreclosure sale "subject to all the obligations and trusts to

which the land itself was subject." *Cook* v. *Howe*, 280 Mass. 325, 329. But since the duty of the administratrix to account for such profit results solely from the fact that as administratrix she stands in a fiduciary relation to the estate, and since the effect of such resale was, in substance, to increase the amount of the surplus proceeds of the foreclosure, it was proper for her to account for such profit, as money due from her to the estate, in her account as administratrix, irrespective of whether it belongs ultimately to the heirs at law or next of kin. See *Varnum* v. *Meserve*, 8 Allen, 158; *Hovey* v. *Dary*, 154 Mass. 7; *Cook* v. *Howe*, 280 Mass. 325, 329. The amount of such profit does not appear in the account in exactly that form, but may be determined by considering together the items in schedule A and schedule B. And, in so considering the items in schedule B, they are to be taken as "fair and reasonable in view of all the circumstances," in accordance with the finding of the judge to that effect, which is not plainly wrong.

The amount received from resale of the real estate ($700) represents the gross amount received on such resale in excess of the amount paid by the administratrix, or her representatives, at the foreclosure sale. However, in determining the profit actually received by her the reasonable expense of such sale ($19.50) must be deducted. Furthermore, the facts found import that the expenses incurred by the administratrix in prosecuting the action of ejectment ($347.90) and in defending the suit in equity in which the foreclosure was attacked ($300) were incidental to the disposition of the real estate in accordance with the method which it was necessary for the administratrix to adopt "in order to get the best possible price for said property," and, therefore, properly deductible from the amount received by her from the resale of the real estate in order to determine the profit derived from such resale.

The rents included in schedule A ($334.70) were rents collected for the period during which she had legal title to the real estate. For this reason, if not for others, they were properly collected by her. But they represent a profit derived by her from the transaction as a whole, for which

she must account as for other profit so derived. The amount, however, for which she must account as profit is to be reduced by the expenses reasonably incurred in collecting such rent, such as the expense of prosecuting an action for its collection ($145). It appears that the taxes for the years 1931–1932 ($189.05) were paid in connection with the resale of the real estate. Apparently they were taxes for the period during which the representative of the administratrix was the legal owner of such real estate, and, as such, liable therefor. They may properly be regarded as reducing the profit received by her either from the rent or from the resale. And the expenditure for fire insurance ($24.60) apparently is similar in character. We are unable, however, to find in the record any ground for allowing the payments for taxes on the real estate for 1928 ($79.42) and for 1929 ($79.60) in reduction of the amount for which the administratrix is accountable or against assets in her hands. It does not appear that these taxes were paid after the administratrix — or her representatives — became the legal owner of the real estate by purchase at the foreclosure sale or that such real estate at that time was subject to any lien for these taxes. See G. L. (Ter. Ed.) c. 60, § 37; c. 244, § 14. Consequently, it does not appear that the payment of these taxes bore any relation to the real estate transaction which the administratrix carried on for the benefit of the estate. The administratrix, as such, was not liable for these taxes and if she paid them as one of the cotenants of the real estate she is not entitled to an allowance therefor in her account, but her remedy was against the other cotenants. See *Kites* v. *Church*, 142 Mass. 586. The payments for these taxes must be disallowed.

The other items in schedule B of the account require no discussion. They were of a kind proper for allowance and the finding that they were "fair and reasonable" was not plainly wrong.

It follows from what has been said that the amount stated in schedule C of the account as on hand ($258.43) is accurate except as it is increased by the amount of the payments for taxes disallowed, aggregating $159.02. It is

unnecessary to decide whether the amount on hand or any part of it is to be distributed by the administratrix as personal estate or as if it were real estate. Apparently the same persons will take in either event.

The decision in this case is supported by the facts disclosed by the record, but a method of disposition of real estate such as was adopted by the administratrix is not ordinarily to be approved as proper.

The decree of the Probate Court must be modified by providing therein that the account be amended in schedule B by disallowing the payments shown therein for 1928 and 1929 taxes, aggregating $159.02, and making a corresponding decrease in the total amount of this schedule, and amended in schedule C by making a corresponding increase in the amount on hand to $417.45, and that the account as so amended be allowed. The decree as so modified is affirmed.

*Ordered accordingly.*