FLORENCE L. JOSE & others *vs.* FRANK W. LYMAN & others, executors.

Middlesex.    May 11, 12, 1943. — June 1, 1944.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, RONAN, WILKINS, & SPALDING, JJ.

*Fiduciary. Executor and Administrator,* Duty of fidelity, Accounts, As creditor of estate, Cofiduciary. *Pledge. Probate Court,* Accounts, Revocation of decree, Findings by judge, Appeal. *Minor.*

Material facts voluntarily reported by a judge of probate on appeal as the sole basis of his decision have the same standing as material facts reported under G. L. (Ter. Ed.) c. 215, § 11, and, in the absence of a report of the evidence, the only question before this court is whether the decision was right on the pleadings and the facts so reported.

The facts that an executor, who was also a creditor of the decedent's estate and a pledgee of securities constituting collateral for the debt, unnecessarily transferred the securities to himself in a manner not permitted by the terms of the pledge, accepting the securities in full satisfaction of such debt, but not disclosing to the beneficiaries of the estate in his account or otherwise that he was the transferee and so wording items in his account respecting the transaction that they could well assume that a sale had been effected in accordance with the terms of the pledge, with the further fact that he later realized on the securities an amount in excess of the amount of such debt, showed a breach of his duty as pledgee and executor toward the beneficiaries, deprivation of their right to question and have determined the propriety of the transaction under G. L. (Ter. Ed.) c. 197, §§ 6, 7, and a fraud in law on them entitling them under c. 206, § 24, as appearing in St. 1938, c. 154, to revocation of a decree allowing the account, although it also appeared that the executor acted throughout in good faith and that at the time of the transaction the values at which he took the securities were fair and adequate and the result of the transaction then was beneficial to the estate.

The making of an agreement between a pledgee of securities, who was also executor of the will of the pledgor, and another holder of like securities that neither would offer his securities for sale on the market for eighteen months did not support a conclusion that the immediate transfer of the securities held by the pledgee to himself was necessary to the effectiveness of such agreement or to the protection of the pledgee.

The fact that a guardian ad litem for a minor beneficiary was apprised of all the facts underlying an executor's account and assented to its allowance did not preclude the minor from subsequently seeking to reopen

the account for fraud under G. L. (Ter. Ed.) c. 206, § 24, as appearing in St. 1938, c. 154.

An account of three executors might be reopened by the beneficiaries of the estate as against all of the executors for fraud in law of one of them in a transaction covered by the account, where the other two executors ratified such transaction and signed the account with full knowledge of the facts relating thereto.

PETITION, filed in the Probate Court for the county of Middlesex on September 24, 1942.

The case was heard by *Poland,* J.

In this court the case was argued at the bar in May, 1943, before *Field,* C.J., *Donahue, Qua, Dolan,* & *Cox,* JJ., and after the retirement of *Donahue* & *Cox,* JJ., was submitted on briefs to *Lummus, Ronan, Wilkins,* & *Spalding,* JJ.

*W. Noyes,* for the petitioners.

*R. E. Goodwin,* (*H. A. Reynolds* with him,) & *R. H. Willard,* (*A. L. Taylor, Jr.,* with him,) for the respondents.

DOLAN, J. This is an appeal from a decree dismissing the petition seeking revocation of the decree entered in the Probate Court on June 23, 1938, allowing the first account of the respondent executors of the will of Jesse P. Lyman. The petition for revocation of the decree was filed on September 24, 1942.

The petition for revocation of the decree allowing the respondents' first account is based on allegations of fraud and manifest error. See G. L. (Ter. Ed.) c. 206, § 24, in the form inserted by St. 1938, c. 154. This statute was in force at the time of the filing of the petition for revocation. The evidence is not reported but the judge made a report of the material facts found by him. They may be summed up as follows: The petitioners are Florence L. Jose, the only child of the testator, and her five children, two of whom are minors represented by their mother as guardian. Mrs. Jose is a legatee under the will of the testator to the extent of $5,000, and she and her children are the beneficiaries named in a trust of the residue, and the children are also beneficiaries named in a trust created under the will of the testator's widow of which the respondents Mr. Taylor and Jacob are the executors and trustees. The widow of the testator died in January, 1934. She was a substantial

creditor of his estate and her claim was proved and allowed by the commissioners in insolvency appointed in his estate. The account in question was allowed on June 23, 1938, after due notice and the appointment of a guardian ad litem or next friend for minors and persons unascertained who assented to the allowance of the account after full investigation. The principal contention of the petitioners is that the decree allowing the first account should be revoked because of fraud or manifest error in that the respondent executors, Frank W. Lyman, Amos L. Taylor, Esquire, and Henry P. Jacob, had a duty to disclose important and material facts to the beneficiaries of the estate concerning a certain transaction involving the conduct of the executor Lyman which was known to the other executors, but that he and they failed to do so. The transaction involved was as follows: Prior to his death on September 14, 1931, the testator had exhausted his borrowing power at banks and needed $70,000. To obtain that sum he induced his nephew, the respondent Frank W. Lyman, who was closely associated with him in business, to borrow on his own (Frank's) note $70,000 from a bank. The testator received this money from Frank and gave him a demand note for that sum secured by collateral consisting of nineteen hundred shares of Eastern Equities Corporation stock, and twenty-two hundred thirty-one shares of the common stock and three hundred twelve shares of the preferred stock of the Fitchburg Yarn Company. None of those shares was listed on any stock or security exchange. The Eastern Equities Corporation had done business until October, 1930, under the corporate name of the American Glue Company. Its stock will be hereinafter referred to as the "glue stock." The testator had been its president and at his death held about twenty-six per cent of its outstanding stock. Under the terms of the note the pledgee Lyman was given the right to sell the collateral at broker's board or at public auction or private sale without notice and to become the purchaser at any such sale "if at public auction or at Broker's Board."

During the year 1930 the glue company had disposed of all its plants and operating properties and at the time of the

testator's death was in process of liquidation by vote of its stockholders. Several liquidating dividends had previously been paid to the stockholders. The assets of the testator's estate, apart from some real estate which proved to be of nominal value, consisted of stocks, a few bonds, and accounts receivable. All of the securities that had any sale value had been pledged by the testator to secure loans and other obligations. At the testator's death the respondent Lyman held the glue and yarn stocks pledged to him as collateral by the testator, and there was due to him on the note, payment of which they were given to secure, $50,000. At the same time a firm of brokers, hereinafter referred to as Lapham, held on margin fifty-four hundred ninety-one shares of the glue stock and a smaller amount of the yarn stock. Banks also held some three thousand or four thousand shares of the glue stock. A total of about eleven thousand shares of the glue stock was held by the banks, brokers or creditors and "would have been greatly injured in money value if large blocks of the stock had then been thrown on the market," that is, following the death of the testator in September, 1931. The market for securities generally in 1931 and 1932 was chaotic, and had the glue stock in question been offered for sale, very small prices could have been obtained therefor, if in fact the stock could have been sold at all. If Lapham or the respondent Lyman (hereinafter referred to as Lyman) had advertised large blocks of glue stock for sale, other holders of it would have become frightened and probably would have thrown their shares of glue stock on a nonexistent market to the detriment of the shares in which the estate had an interest. In January, 1932, Lapham threatened to sell the glue and yarn stocks held on margin. Lyman, then and now one of the executors, made a "freezing" agreement with Lapham, on January 26, 1932, by which they agreed not to throw their respective blocks of glue stock on the market for a period of eighteen months. This agreement was for the benefit of the testator's estate, and as "incidental" to the agreement Lyman transferred to himself on January 27, 1932, the stock that he held as collateral security for the testator's note

without the formalities of a demand or sale. At the time
of taking over the collateral, during most of the period cov-
ered by the executors' first account, and at the time of the
hearing of the petition under consideration, Lyman was
president and a director of the glue company. After trans-
ferring the glue stock held by him as collateral, he was the
holder of five thousand of its forty-four thousand shares
outstanding. At the same times he was president, treasurer,
a director and active manager of the yarn company, and
the owner of six hundred sixty-seven shares of its common
stock, in addition to the twenty-two hundred thirty-one
shares of stock that he transferred to himself, out of twelve
thousand shares of that stock outstanding. After the trans-
fer to himself he was also the owner of eighteen per cent of
the preferred stock of the yarn company. He made that
company his principal business activity "following the liq-
uidation of the glue company." He did not consult his
coexecutors about transferring the pledged stock to himself
until after he had done so. Upon learning of this action,
the respondent executor Mr. Taylor chided him and "made
an elaborate investigation of the values of the stocks before
deciding what to do." On January 27, 1932, (the day Lyman
had transferred the stocks to himself), there was due to
him on the note of the testator about $45,000 ($45,394)
including interest. He placed a value of $32,613 upon the
stocks in question, and accepted them in full satisfaction
of the note, thus waiving and extinguishing $12,781 of the
debt due to him thereon from the estate. The details of the
whole transaction were explained to the guardian ad litem
who assented to the account. The items of the account
dealing with the transaction complained of were as follows:

"Schedule B . . .
    Item 193:
        1932
        Jan 27     Cash paid Frank W. Lyman, acct. his
                   note by sale of collateral, held by
                   him                                        $22,800.00
    Item 194
        1932
        Jan 27     Cash paid Frank W. Lyman, acct. his
                   note by sale of collateral, held by
                   him                                         $6,693.00

Item 194A
1932
Jan 27     Cash paid Frank W. Lyman, acct. his
         note by sale of collateral, held by
         him                            $3,120.00.''

A copy of the account was sent to Mrs. Jose (then Mrs. Alexander) by Mr. Taylor together with a letter dated June 4, 1938. She examined the account. The letter of Mr. Taylor, which discussed at length the affairs of the trust, did not, however, disclose the fact that Lyman had transferred the stocks to himself, and had not sold them "at public auction or at Broker's Board" but was himself the purchaser at a private "sale." There is no reference in the letter to the items of the account relating to the stocks held by Lyman as collateral. Mr. Taylor had been counsel for the Lyman family for many years and had been personal counsel for Mrs. Jose. She relied upon him fully and did not question the account. He "did not tell her of the possible right of rescission on which she now insists and did not advise her to obtain independent counsel." She did not know the facts stated above as to the action by Lyman until December, 1939, when her husband, a lawyer, caused an investigation of the account to be made. The three adult children of Mrs. Jose, who are now among the petitioners, "did nothing in relation to the account and had no knowledge of the facts relating to it." Two of the children were then adults. The account was prepared under Mr. Taylor's instructions and was adopted by him. He "had no conscious motive to deceive the persons interested in the account" by the wording. He considered and now considers that the transaction constituted a sale of the stocks. The two children of Mrs. Jose who were adults when the account was presented for allowance, knowing that it had been prepared by Mr. Taylor and that he was the family lawyer as well as an executor and trustee under the wills of the testator and their grandmother, did not consider it necessary to concern themselves respecting the account. There "was evidence tending to show" that on December 31, 1937, the end of the accounting period, the value of the

dividends, including cash and shares of a corporation dis-
tributed as a liquidating dividend, received by Lyman on
the "stock taken by him" exceeded the amount of prin-
cipal and interest that would have been due him on the
testator's note, and that "this fact was known to the ac-
countants Lyman and Jacob, but not to Mr. Taylor." We
interpret these statements to mean that the judge so found,
the recitals of evidence having no place in a report of ma-
terial facts. See *Sidlow* v. *Gosselin*, 310 Mass. 395. The
judge found that the values placed upon the stocks by
Lyman at the date of his taking them were fair and ade-
quate, that the result of the transaction was beneficial to
the estate and that all the executors acted in good faith at
all times. The judge also found that "So far as material"
the claim of the petitioners is not frivolous. The judge
further found that, "So far as it is matter of fact, . . . the
facts do not constitute fraud or manifest error within the
meaning of G. L. (Ter. Ed.) c. 206, § 24, so as to require
the opening of the account." He ruled "that upon the
facts a decree of revocation is not warranted within the
meaning of that statute," stating that he had made a de-
cree dismissing the petition. While it is alleged in the peti-
tion that Lyman received over $100,000 in benefits from
the stocks in question, the judge did not expressly find what
profits he did receive therefrom, but found only that he
received more than the amount of his debt with interest.

Since it is clear that the judge rested his decision solely
on the facts found by him, although so far as appears his
report of material facts was made voluntarily, it has the
same effect and is to be treated as would be a report made
under the provisions of G. L. (Ter. Ed.) c. 215, § 11. *Birn-
baum* v. *Pamoukis*, 301 Mass. 559, 562. *Thaxter* v. *Traiser*,
305 Mass. 341. This being so, the only question open on
this appeal is "whether, solely on the findings reported by
the judge, considered as above stated, the decree was rightly
entered." *Wiley* v. *Fuller*, 310 Mass. 597, 599. See also
*Peabody* v. *Dymsza*, 280 Mass. 341, 342; *Karas* v. *Karas*,
288 Mass. 460, 462; *Goldston* v. *Randolph*, 293 Mass. 253,
255; *Druker* v. *Druker*, 308 Mass. 229, 230.

It is unnecessary to decide whether the transfer, in effect a sale, by Lyman to himself was void as not having been effected in the manner prescribed by the terms of the pledge, since we are of opinion that the transaction in question is voidable at the instance of the petitioners as in violation of the duties of Lyman as pledgee, in the light of his executorship and the fiduciary relationship arising therefrom and from his office as trustee under the will of the testator, which existed between him and the petitioners who were beneficiaries under the will. *Bowen* v. *Richardson*, 133 Mass. 293, 296. *Dudley* v. *Dudley*, 300 Mass. 270, 276. *Terry* v. *Terry*, 305 Mass. 113, 115. His first duty was the protection of the estate. "No self interest could conflict with this responsibility. He could not derive any personal advantage at the expense of the trust, and could not put himself in a position antagonistic to the interests of those whom he represented, even if the price was adequate. . . . If a trustee deals fairly, openly and in good faith, a transaction in which he is personally interested will not be avoided. . . . But no advantage could be taken of the parties beneficially interested, by misrepresentation or concealment of any important fact, and they must be in a position to understand the nature and effect of the . . . [transaction]." *Ball* v. *Hopkins*, 268 Mass. 260, 266, and cases cited. *Denholm* v. *McKay*, 148 Mass. 434, 440. *Spilios* v. *Papps*, 288 Mass. 23, 29. *Comstock* v. *Bowles*, 295 Mass. 250. *Dudley* v. *Dudley*, 300 Mass. 270. In the present case there was no disclosure of the fact that Lyman had transferred the stocks in question to himself, in the account or otherwise. The beneficiaries were not put in a position where they understood the nature and effect of the transaction. The items in the account relating to the transaction were so worded that the beneficiaries could well assume that the moneys accounted for as received from the sale of the collateral were received from a sale made in accordance with the terms of the pledge. See *Lincoln* v. *Aldrich*, 141 Mass. 342, 343; *Brown* v. *Greene*, 181 Mass. 109, 111; *Greene* v. *Springfield Safe Deposit & Trust Co.* 295 Mass. 148, 154. There was nothing in the account to show that Lyman had become

the owner of the collateral at the sale referred to therein. Whether the nondisclosure was intentional or not is not material. *Jason* v. *Jason*, 289 Mass. 72, 78–79, and cases cited. *Howard* v. *Barnstable County National Bank*, 291 Mass. 131, 135, 136. The findings of the judge that the executors acted in good faith and that the price paid by Lyman was fair and the result beneficial to the estate, in the light of the other facts found by the judge, cannot avail the executors. *Dyer* v. *Shurtleff*, 112 Mass. 165, 168–169. *Hayes* v. *Hall*, 188 Mass. 510, 511–512. *Sunter* v. *Sunter*, 190 Mass. 449, 455. *Hall* v. *Paine*, 224 Mass. 62, 73. *Witherington* v. *Nickerson*, 256 Mass. 351, 355–356. *Terry* v. *Terry*, 305 Mass. 113, 115. Scott, Trusts, §§ 170.2, 170.25. See Am. Law Inst. Restatement: Trusts, § 170 (1) (2). From the cases cited it must be taken to be fully settled that "The rule is general and fundamental, that no person holding trust funds can be allowed to derive any personal gain or advantage, either directly or indirectly, from the use [or sale] thereof . . . [that] he must account for all the profits arising from such use, if profits are made, . . . [and that] This rule is applicable to every kind of fiduciary relation . . . ." *Bowen* v. *Richardson*, 133 Mass. 293, 296, 297. The rule applies although the fiduciary acquiring the property for himself is only one of two or more fiduciaries, *Denholm* v. *McKay*, 148 Mass. 434; *Hayes* v. *Hall*, 188 Mass. 510, 513, and although the cofiduciaries have fixed or consented to the purchase price. *Morse* v. *Hill*, 136 Mass. 60. Scott, Trusts, § 224.1. See *Industrial Trust Co.* v. *Dean*, 67 R. I. 504. The respondents rely upon *Vinal* v. *Gove*, 275 Mass. 235, 242, and *Dudley* v. *Dudley*, 300 Mass. 270, 274, in which it was said, in substance, that the rule just referred to did not apply where the trustee had an interest in such property which could be protected only through purchase by himself. But in such a case the sale will not be held voidable if the price was fair and the sale was free from actual fraud and was not injurious to the estate, and if the fiduciary accounts "fully for any profit derived from the transaction." *Dudley* v. *Dudley*, 300 Mass. 270, 274. The facts found in the present case show that Lyman did make

an ultimate profit out of the sale to himself, and that he and his coexecutors have not accounted for it. The judge has found that the transfer of the pledged stock by Lyman to himself was "incidental" to the "freezing" agreement. If by this it is meant that it was necessary to give effect to that agreement, we are unable to adopt that conclusion. The agreement was entered into on January 26, 1932. It was to be in effect for eighteen months. The judge found that it was beneficial to the estate, but Lyman transferred the collateral to himself on the day following its execution. In our view that action cannot rightly be said to have been indispensable to the effectiveness of the "freezing" agreement or to the protection of Lyman. He entered into the "freezing" agreement because of adverse market conditions for the reasons found by the judge, in a word, to await a better market to salvage something out of the collateral. It was his duty to do that for the estate. The facts of his immediate transfer to himself and his retention of the collateral in his own right thereafter with profit to himself do not support a conclusion that he acted in the interest of his trust as was his duty.

The purpose and effect of St. 1938, c. 154, § 1, was to make decrees in Probate Courts on interim accounts after compliance with the requirements of the statute as fully effective as decrees entered in those courts in other proceedings which could be revoked only for fraud or manifest error. *Greene* v. *Springfield Safe Deposit & Trust Co.* 295 Mass. 148, 153. *Waitt* v. *Harvey,* 312 Mass. 384, 397. No citation of authorities is needed to support the established principle that the power of the Probate Court to revoke its decrees for fraud or manifest error is inherent in that court. And decrees of Probate Courts are revocable upon clear proof of fraud in matters not once actually presented and passed upon. *Blake* v. *Pegram,* 101 Mass. 592, 598–599, *S. C.* 109 Mass. 541, 551–552. *Barrett* v. *Briry,* 256 Mass. 45, 47. Decrees of Probate Courts will be revoked if procured by a fraud that operates to deprive an interested party of his day in court. *McLaughlin* v. *Feerick,* 276 Mass. 180, 182–183. In the instant case we are of opinion that the

conduct of Lyman and his coexecutors comes within the category last mentioned for reasons already set forth.

The common law right of appropriation and retainer by an executor in satisfaction of his debt has been argued by the respondents with citation of authorities to which it is unnecessary to refer. That well settled right at common law of an executor to retain out of the assets of the estate the amount of a debt due to him from the testator is not in conflict with the principles set forth above as governing the present case upon the facts found, and is not "interfered with by our statutes, but the manner in which the amount of the debt is to be determined is provided for by Pub. Sts. c. 136, §§ 6, 7 [see now as applicable to the present case G. L. (Ter. Ed.) c. 197, § 6], when any one interested in the estate disputes the claim." *Foster* v. *Bailey,* 157 Mass. 160, 164–165. In such case the statute (G. L. [Ter. Ed.] c. 197, §§ 6–7) provides for the filing of the claim in the Probate Court and its determination by the methods prescribed. The manifest purpose of the statute is to afford protection to the beneficiaries of the estate whenever there is any dispute as to a claim made by an executor, whether as to the liability or the amount or the value of that appropriated, *Prentice* v. *Dehon,* 10 Allen, 353, 354; *Green* v. *Russell,* 132 Mass. 536, 541, and, we think, in the circumstances of the present case, whether the collateral has been disposed of in accordance with the terms of the pledge or dealt with in the manner required by the fiduciary relationship of the respondents to the petitioners. The purpose of the statute is to bring the administration of the estate in these respects "under the supervision and control of the Probate Court . . . [so that] the danger of a fiduciary [in exercising his right of appropriation] taking advantage of his position for his personal benefit is eliminated." *Terry* v. *Terry,* 305 Mass. 113, 115. See *Hayes* v. *Hall,* 188 Mass. 510, 511. By virtue of the failure of the executors to disclose the facts and the misleading wording of the items in the account concerning the transaction in question, it is proper to conclude that the petitioners were in effect denied an opportunity to face the real situation and to dispute the

action of Lyman with relation thereto, thus losing the benefits of the statutes to which we have just made reference.

The findings of the judge would not support the conclusion that the petitioners ever acquiesced in the action of Lyman ratified by his respondent coexecutors and not disclosed by them to the petitioners. Compare *Guinzburg* v. *H. W. Downs Co.* 165 Mass. 467, 470. The adult petitioners did not know of the real character of the transaction in question until long after it had taken place, and the respondents' contention that they had been guilty of laches is disposed of by the findings of the judge as to that fact, and also by his finding that the petition was brought within a reasonable time. We see no reason to disagree with that conclusion. See *Dodge* v. *Anna Jaques Hospital*, 301 Mass. 431, 436–437. That the real facts were communicated to a guardian ad litem appointed to represent the interests of the minors and that he assented to the account does not preclude them from seeking a revision and correction of the account. Laches is not to be imputed to a minor, and no exception is made of infants under guardianship. *Denholm* v. *McKay*, 148 Mass. 434, 442, 443, and cases cited.

The respondent coexecutors stand in no different position than Lyman with respect to liability. Mr. Taylor on learning of the transaction "chided" Lyman. Knowing the facts he caused the account to be prepared in the form recited, and in writing to Mrs. Jose at length, and in transmitting a copy of the account to her for examination, he made no reference to the subject of the "sale" by Lyman to himself. He adopted the price fixed by Lyman for the collateral as did Jacob who also knew the true facts. They ratified the transaction in question with full knowledge thereof. All the respondents, knowing the facts, signed the account. In these circumstances the liability of Mr. Taylor and Jacob is the same as that of Lyman.

Upon the facts found, the proper conclusion is that the allowance of the respondents' first account was procured by fraud in law. The decree appealed from is reversed and the case must be remanded to the Probate Court for further proceedings in accordance with this opinion.

*Ordered accordingly.*