MASUKO DOROTHY SUGA *vs.* AUDREY MAUM.

No. 89-P-519.

Nantucket. May 16, 1990. - January 23, 1991.

Present: BROWN, SMITH, & JACOBS, JJ.

*Probate Court*, Jurisdiction. *Land Court*, Jurisdiction. *Jurisdiction*, Probate Court, Land Court, Equitable. *Real Property*, Deed, License to sell. *Deed*, Description. *Executor and Administrator*, License to sell real estate, Real estate of decedent.

A Probate Court, by virtue of G. L. c. 215, § 6, had concurrent jurisdiction with the Land Court under G. L. c. 185, § 1 (*k*), of an action involving the removal of a cloud on the title to a certain parcel of land. [736]

Language in an instrument designated a "waiver of interest" in which a deceased's sister and sole legal heir incorporated reference to her brother's disallowed will (leaving a specifically described parcel of property to his companion) and recited that she conveyed to her brother's companion all "right, title and interest" as "sole heir at law and next of kin" and as an "intestate beneficiary of [her] late brother's estate" was sufficient to pass title in fee simple to the parcel of land from the deceased's sister to her brother's companion; furthermore, the actions of the parties with regard to maintenance of the property supported the construction of the "waiver of interest" as a valid conveyance. [736-738]

Although the administratrix of an estate neglected to obtain a license to sell before recording a deed to a certain parcel of land from herself as administratrix to herself as an individual in 1974, the Probate Court in 1989, pursuant to G. L. c. 204, § 24, properly could issue a retroactive license to sell, and confirm the deed, where the court had the power to vest title in the administratrix at the time she recorded the deed to herself in 1974; moreover, as the largest creditor of the estate who had personally settled the estate debts, she would have been entitled under G. L. c. 202 as administratrix to a license to sell the property and thereby distribute the assets of the estate. [738-740]

CIVIL ACTION commenced in the Nantucket Division of the Probate and Family Court Department on May 23, 1988. The case was considered by *Eliot K. Cohen*, J.

*James W. Stone* for the defendant.

*Keith M. Yankow* for the plaintiff.

BROWN, J. The defendant, Audrey Maum, appeals from a judgment entered in a Probate Court ordering her to execute a deed confirming title in a certain parcel of land located in Nantucket to the plaintiff, Masuko Dorothy Suga. The findings of the Probate Court judge are as follows.

On December 16, 1971, Sartain Smith, a resident of the District of Columbia and owner of a cottage on Nantucket, "Auld Lang Syne" (the property), died. He left a "will" naming his companion, Mishi Kamiya, executrix and sole heir of his estate, which included the Nantucket property.[1] Because the will lacked the necessary signature of a witness to Smith's signature, the Probate Division of the Superior Court of the District of Columbia disallowed it and ruled that Smith died intestate.

On or about June 22, 1972, Audrey Maum, Smith's sister and legal heir, signed and filed a "Waiver of Next of Kin," approving the appointment of Kamiya as administratrix of Smith's estate, and a "Waiver of Interest in Estate." The latter, which is the fulcrum of the present dispute, reads as follows:

"I, Audrey Maum, a resident of the state of Alabama, and an adult, and the sole heir at law and next of kin of Sartain Smith, deceased, out of consideration of my love and affection for my late departed brother, Sartain Smith, and acknowledging his wishes although not set forth in such form as to be granted probate within the District of Columbia, do hereby transfer, assign and convey all my right, title and interest as an intestate beneficiary of my late brother's estate to Mishi Kamiya of Washington, D.C."

[1]In addition to the property, the decedent's estate consisted of $650 in personalty, $300 of which was located in Massachusetts, and $350 in Washington, D.C. The real property was valued at $20,000. However, the debts of the estate included $32,319.75 owed to Kamiya for money that she had lent to Smith "for the purpose of purchasing and repairing" the subject property.

Each waiver was signed by two witnesses. Pursuant to the "Waiver of Next of Kin," the United States District Court for the District of Columbia (acting in its capacity as a Probate Court) named Kamiya administratrix of Smith's estate.

Kamiya subsequently sought and received appointment as administratrix of Smith's Massachusetts estate on September 14, 1972. On October 10, 1974, Kamiya recorded a deed to the property from herself as administratrix to herself as an individual. Until her death in 1984, Kamiya paid taxes on the property, maintained and repaired it, and resided there in the summer.

When Kamiya died on March 1, 1984, she left the property to her sister, Suga, in her will. Suga continued to pay the taxes and to maintain the property.

Suga attempted to sell the property in 1986,[2] but she was unable to consummate the transaction due to defects in the chain of title, viz., the lack of acknowledgment of Maum's waiver of interest and Kamiya's failure to obtain a license to sell prior to transferring the property to herself.

In order to clear the title to the property, Suga requested, on numerous occasions, a confirmatory deed from Maum. Maum initially "declined to execute the deed and upon ascertaining the current value of the property has refused to do so."[3] After Maum's refusal to execute a confirmatory deed, Suga filed a complaint in the Nantucket Probate and Family Court on May 23, 1988, seeking an order to remove the cloud on her title and to require Maum to execute the deed.

The probate judge denied Maum's motion to dismiss the complaint for lack of subject matter jurisdiction. By agreement of the parties, the judge decided the case solely on the basis of the trial briefs and documentary evidence, which included the affidavit of Maum.[4] The probate judge entered

---

[2]The probate judge found that the purchase and sale agreement was dated October 24, 1986.

[3]The value of the property has escalated significantly in the years following Maum's waiver of interest.

[4]Because the conveyance at issue took place some sixteen years prior to the dispute and because the witnesses to the contested waivers are now

judgment in favor of Suga and ordered Maum to execute a confirmatory deed relative to the subject property. Maum raises three issues on appeal. We treat them seriatim.

1. *The jurisdiction of the Probate Court.* Maum claims that the Probate Court did not have subject matter jurisdiction over this dispute and that the judge should have transferred the matter to the Land Court for determination. We disagree. Under G. L. c. 185, § 1($k$), as amended by St. 1987, c. 421, § 2, the Land Court has concurrent jurisdiction with the Probate Court over "[a]ll cases and matters cognizable under the general principles of equity jurisprudence where any right, title or interest in land is involved, . . . except actions for specific performance of contracts." See *Tetrault* v. *Bruscoe*, 398 Mass. 454, 458 (1986). As this case involves removal of a cloud on title, a matter "cognizable under the general principles of equity jurisprudence" (G. L. c. 215, § 6, as amended by St. 1981, c. 616), the Probate Court properly exercised jurisdiction. See *Lagasse* v. *Lagasse*, 20 Mass. App. Ct. 911, 912-913 (1985); *Cole* v. *Anciporch*, 25 Mass. App. Ct. 975, 976 (1988).

2. *The waiver of interest.* The probate judge found that by its terms the "waiver of interest" was actually a deed validly conveying the property from Maum to Kamiya in fee simple. Maum attacks the judge's conclusion on two grounds, the second of which we need not address.[5]

Maum's argument against the waiver of interest effecting a conveyance centers on procedural irregularities attending its drafting and execution. But see Swaim, Crocker's Notes on Common Forms § 407, at 224 (7th ed. 1955). Because the "waiver" does not lay out the metes and bounds or even

---

deceased, it was not error for the judge to have decided the case without benefit of a hearing. See *Markell* v. *Sidney B. Pfeifer Foundation, Inc.*, 9 Mass. App. Ct. 412, 429-430 (1980).

[5]In the statement of facts in her brief, Maum asserts, contrary to the judge's finding, that she did not intend "to permanently convey the property." This brief contention, without any authority save reference to Maum's affidavit, does not rise to the level of appellate argument, and we do not consider it. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975); *Penta* v. *Concord Auto Auction*, 24 Mass. App. Ct. 635, 642 (1987).

explicitly denote the specific parcel as the subject of the conveyance, Maum argues that it fails as a deed.

The probate judge correctly ruled that despite the questionable form of the "waiver," it was sufficient to pass title from Maum to Kamiya. All that is required of a description in a deed is that it adequately identify what is being conveyed. *McHale* v. *Treworgy*, 325 Mass. 381, 385 (1950). The description may be complete in itself, or it may incorporate other documents by reference. See 6A Powell & Rohan, Real Property § 899[1] (1990 ed.). In her "waiver," Maum explicitly cited her brother's disallowed will and his wishes contained therein.[6] Smith's specific designation of the property in his will and Maum's incorporation of that document into her "waiver" amply described what was being conveyed.

Even if we were to find the description in the "waiver" to be inadequate, this deficiency alone would not render it invalid as a deed. The general intent to convey overrides the use of an ineffective form. *Kaufman* v. *Federal Natl. Bank*, 287 Mass. 97, 101 (1934). See G. L. c. 183, § 6A. Conveyances should be "construed as to give effect to the intent of the parties" as may be gleaned from "the words used, interpreted in the light of the material circumstances and pertinent facts known to them at the time" of the transfer. *Commercial Wharf East Condominium Assn.* v. *Waterfront Parking Corp.*, 407 Mass. 123, 131 (1990) (citations omitted). See *Hillman* v. *Roman Catholic Bishop of Fall River*, 24 Mass. App. Ct. 241, 243 (1987) (instrument of conveyance is properly construed "by considering its language as illuminated by the circumstances attendant upon its drafting and delivery").

Maum's "waiver" purports to transfer to Kamiya all "right, title, and interest" in Smith's estate. Those particular "words have acquired in deeds a certain and definite meaning. They convey whatever title the grantor has." *Baker* v.

---

[6]In his will, Smith left to Kamiya his "cottage on Nantucket Island, Mass. known as 'Auld Lang Syne' together with its contents," as well as "all the rest of [his] property including all works, books, etc. and residue of [his] property after payment of the debts & expenses."

*Davie*, 211 Mass. 429, 439 (1912). Maum's "waiver" passed to Kamiya all her interest as "sole heir at law and next of kin" and as an "intestate beneficiary of [her] late brother's estate." Maum also clearly spells out her desire that the provisions of Smith's disallowed will be effectuated through the "waiver," "acknowledging his wishes although not set forth in such form as to be granted probate within the District of Columbia." This elaborate recounting of the nature of Maum's interest and her pointed reference to Smith's wishes demonstrate that she intended to convey the property to Kamiya without limitation. Compare *Wainwright* v. *Sawyer*, 150 Mass. 168, 170-171 (1889); *Russo* v. *Inzirillo*, 360 Mass. 862, 863 (1971).

Finally, to the extent any doubt remains, the actions of the parties support the construction the probate judge gave the waiver of interest. "[W]here the language of an instrument is doubtful, evidence of the practical construction by the parties is admissible to explain and remove the doubt." *Commercial Wharf East Condominium Assn.*, 407 Mass. at 132, quoting from *Oldfield* v. *Smith*, 304 Mass. 590, 600 (1939). After receiving the "waiver" from Maum, Kamiya repaired the property, paid taxes on it, and resided there each summer. Further, since Kamiya's death and her devise to Suga of the property in 1984, Suga alone has maintained the property and paid the taxes on it. Maum evinced no interest whatsoever in the property until the receipt of Suga's request for a confirmatory deed caused her to become aware that she might still have a stake in the proceedings and to discover the dramatic escalation in the value of the property. Certainly, Maum's long-standing disinterest in the property undercuts her interpretation of the effect of the "waiver."[7]

3. *The retroactive license to sell.* Kamiya apparently concluded that her title would be deemed more efficacious if she

---

[7]Because we determine the waiver of interest in the estate to be a valid conveyance, we need not reach the issue of the validity of the "waiver" as a mere disclaimer of intestacy rights. It is true, as Maum points out in her brief, that a waiver or disclaimer is the legal act by which an individual abandons a right and does not normally transfer it to another. See, in this regard, *Chase* v. *Chase*, 1 Mass. App. Ct. 280 (1973). In her "waiver,"

perfected it by transferring the property from herself as administratrix of Smith's estate to herself individually. Kamiya ostensibly accomplished this on October 10, 1974, when she recorded a deed to herself in the Nantucket County registry of deeds. Although Kamiya's transfer of the property to herself was not necessarily an invalid transaction, see, e.g., *Dodge* v. *Lunt*, 181 Mass. 320, 322 (1902); *Potter* v. *Lembo*, 363 Mass. 881, 882 (1973), generally an administrator requires a license to sell before conveying estate property. G. L. c. 202, §§ 1-20. *Roper* v. *Murphy*, 317 Mass. 176, 178 (1944).

Pursuant to G. L. c. 204, § 24,[8] the Probate Court, in 1989, properly could issue a retroactive license to sell, and confirm the deed, if the Probate Court had the power to vest title in Kamiya at the time she recorded the deed to herself in 1974. Under G. L. c. 204, § 24, "no act or proceeding shall be ratified or confirmed which the [probate] court might not have passed or authorized in the first instance upon due proceedings." See *Richards* v. *Keyes*, 195 Mass. 184, 187 (1907); *W.M. Gullicksen Mfg. Co.* v. *MacNeil*, 347 Mass. 568, 574 (1964). We think that the Probate Court would have been empowered to effect a proper transfer to Kamiya of the subject property in 1974. Pursuant to the "Waiver of Next of Kin" Kamiya had already received appointment as administratrix of Smith's estate in Massachusetts. As the court in 1974 would have had before it Maum's unacknowledged "Waiver of Interest in Estate," it would have had the power to vest title in Kamiya at that time

---

however, Maum expressly "transfer[s]" her interest in Smith's estate.

For that reason we also need not reach Maum's argument, based on G. L. c. 191A, § 5, that the document fails as a waiver because it was not acknowledged. We do, however, note in passing that c. 191A did not become effective until October 29, 1975, well after the date of execution of the "waiver." See St. 1975, c. 573, § 1.

[8]That provision in relevant part reads: "[T]he probate court . . . by reason of an alleged irregularity, . . . may hear and determine the matter and confirm the act . . . and may authorize and empower the . . . administrator . . . to ratify and confirm such act or proceeding and to execute and deliver such deeds, releases, conveyances and other instruments as may be found necessary therefor."

Suga *v.* Maum.

through a decree requiring Maum to acknowledge and confirm the deed. G. L. c. 204, § 24. See also G. L. c. 183, § 43.

In addition, Kamiya was the largest creditor of the estate and personally settled the estate debts. As the amount owed to her as creditor was larger than the value of the estate (see note 1, *supra*), she would have been entitled under G. L. c. 202 as administratrix to a license to sell the property[9] and thereby distribute the assets of the estate. See G. L. c. 202, §§ 1, 2; *Dudley* v. *Dudley*, 300 Mass. 270, 275-276 (1938); *Lagasse* v. *Lagasse*, 20 Mass. App.Ct. at 914.

*Judgment affirmed.*

---

[9]In due course, she might have effected a sale to herself in partial satisfaction of the debt owed her.