JAMES MILLER *vs.* EDWARD A. MILLER, JR., executor.[1]

No. 98-P-2325.

Essex. April 4, 2000. - September 8, 2000.

Present: PORADA, DREBEN, & DUFFLY, JJ.

*Executor and Administrator,* Accounts, Loan to estate. *Interest.*

An executor who advanced funds to an estate in good faith, with no self-dealing and without personal gain, when he was unable to secure a commercial loan to pay estate taxes and avoid penalties and interest on possible late payment pending sale of the estate's main asset, real estate, was entitled to interest on the loan. [75-76]

PETITION filed in the Essex Division of the Probate and Family Court Department on March 29, 1988.

Objections to the accounts and a petition for removal of the executor were heard by *John P. Cronin,* J.

*Joseph Fitzgibbons* for the defendant.

*Timothy D. Sullivan* for the plaintiff.

DREBEN, J. This case involves a loan by an executor to an estate that held insufficient liquid assets for the payment of estate taxes. The question before us is whether the executor is entitled to interest on the loan.

Ida Miller died on March 1, 1988, survived by four sons. One of them, Edward A. Miller, Jr., was appointed executor and filed an inventory showing personal property of $1,010 and real estate of $560,000. There were, as a probate judge found, "serious and legitimate difficulties in selling the undeveloped real estate." Because the estate's principal asset was vacant real estate, the executor was unsuccessful in obtaining a bank loan for the payment of estate taxes that were due nine months after Ida's death. Edward and his friend, Patricia A. Bergeron, lent the estate $54,144.18. Taxes in this amount were paid on

[1] Of the estate of Ida A. Miller.

November 30, 1988. On that date, as executor of Ida's estate, Edward executed a promissory note to himself and Bergeron providing for interest at the rate of ten per cent per annum.

The real property was sold in 1994, and Schedule B of Edward's "Substituted First Account" as executor shows that, on September 23, 1994, he paid himself and Bergeron

> ."principal and interest due under promissory note from estate dated 11/30/88-loan of funds to pay Massachusetts estate tax"

in the amount of $85,715.00. When this account and Edward's second account were presented for allowance, his brother James Miller filed several objections and also sought to remove Edward as executor.

The matter was heard by a probate judge. Edward, James, and Bergeron testified.[2] Evidence was also introduced that, had Edward kept the money in the bank, he would have received $30,818.80 in interest, and that, had he not paid the estate taxes until the sale of the property, there would have been penalties and interest owed of $68,785.17.

The judge dismissed the petition for the removal of executor and rejected all of James's objections except for two. The only one involved in this appeal is interest on the loan to the executor. The judge concluded:

> "I find that at all times material to this action, the Executor acted in good faith[,] and that he did not commit an act of 'self-dealing' by his loan to the Estate of $54,144.18 for the payment of estate taxes. He made the loan to help the Estate and his brothers[] and not to derive any personal gain. However, since he did not obtain prior court approval of the loan, nor the written consent of all of the heirs, such a loan is voidable at the option of a beneficiary — even in cases where the Executor acted in good faith. See *Jose* v. *Lyman*, 316 Mass. 271, 279 (1944)."

---

[2]The record on appeal contains only a portion of the transcript.

The parties differ as to whether James was informed of the loan. The transcript shows that Edward claims all the heirs knew and consented to the loan, but James claimed that he did not talk to his brother for about a year and one-half after his mother's death. He acknowledged that he knew his brother had paid the estate taxes. The judge made no finding as to whether James knew or consented.

The judge ruled that, since the executor received a benefit in the form of interest paid totaling $31,570.82, he had to repay that sum to the estate, plus interest, from September 23, 1994, the date of the repayment of the loan. The executor appeals from that part of the judgment which disallows the payment of interest and which orders him to repay that amount plus interest from September 24, 1994. We reverse.

The reliance by James and the judge on *Jose* v. *Lyman, supra,* is misplaced. In that case, a coexecutor transferred stock to himself in payment of a debt owed him by the testator, but the account which the beneficiaries sought to revoke showed:

> "Cash paid Frank W. Lyman [coexecutor] [on account of] his note by sale of collateral, held by him."

Pointing out that there was nothing in the account to indicate to the beneficiaries that the coexecutor had become the owner of the stock, the court rejected the probate judge's finding that the transfer had been beneficial to the estate: "In our view that action cannot rightly be said to have been indispensable to the . . . protection of [the estate] . . . . The facts of his immediate transfer to himself and his retention of the collateral in his own right thereafter with profit to himself do not support a conclusion that he acted in the interest of his trust as was his duty." *Id.* at 280. Moreover, in that case the coexecutor had benefited as the stock which he held rose significantly in value.

In the present case, the advancement of funds by Edward for payment of estate taxes was essential for the protection of the estate. James acknowledged he had no funds to pay the taxes. The judge found that Edward acted in good faith, did not engage in self-dealing, and made the loan to benefit the estate and not to derive any personal gain. There is also no showing that the interest claimed on the account was more than slightly greater than the interest Edward would have received in a bank.

In these circumstances, the case more closely resembles *Jennison* v. *Hapgood,* 10 Pick. 77, 102 (1830), in which an executor who had advanced funds to redeem a mortgage was allowed to receive interest on those sums. See *Simpson* v. *Henry N. Clark Co.,* 316 Mass. 118, 123 (1944). See also 3A Scott, Trusts

§ 244, at 325-326 (Fratcher 4th ed. 1988).[3] Other authorities to the same effect are cited in the margin.[4]

For the reasons stated, that portion of the judgment (paragraph 6B) which requires the executor to repay the interest to the estate is vacated, and the matter is remanded for the entry of an amended judgment allowing the executor interest on the loan.

*So ordered.*

[3]Scott states: "The trustee may advance his own money in discharging obligations properly incurred by him in the administration of the trust, and is then entitled to reimbursement out of the trust estate for the amount so advanced. He may be entitled also to interest on his advances. [Scott cites, inter alia, *Jennison* v. *Hapgood*, 10 Pick. at 102]. It has been held that this does not involve such self-dealing as is improper. On the other hand, the trustee will not be permitted to take advantage of the situation as affording him an opportunity for the investment at interest of his private funds . . . ." See *Steele* v. *Kelley*, 46 Mass. App. Ct. 712, 734 (1999).

[4]*Camden Trust Co.* v. *Haldeman*, 133 N.J. Eq. 427, 434 (1943), aff'd sub nom. *Camden Trust Co.* v. *Cramer*, 136 N.J. Eq. 261 (1945). *In re Trust Estate of LaRocca*, 419 Pa. 176, 182 (1965). *Nolen* v. *Witherspoon*, 182 Tenn. 333, 337-338 (1945). *Hancock* v. *Muldoon*, 136 Wash. 243, 252-253 (1925). See *Hayward* v. *Green*, 32 Del. Ch. 576, 583-586 (1952) (interest payable in discretion of judge); *Gorger* v. *Gorger*, 276 Or. 267, 294-295 (1976).